## CLEARY v. BLAKE et al.

(Supreme Court, Appellate Division, Second Department. March 2, 1897.)

NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

A finding of negligence is not warranted by evidence that defendants' servants, after using a door in a schoolhouse, shut, but did not securely fasten, it, so that an infant attending the school was precipitated into the cellar when he leaned against the door; there being no evidence that the servants knew of the possible consequence of not fastening the door securely. Hatch, J., dissenting, on the ground that defendants' servants were chargeable with notice of the consequence which might follow from not fastening the door.

Appeal from trial term, Kings county.

Action by John Cleary, administrator of Christopher H. Cleary, deceased, against Lucy E. Blake and Francis A. Williams, composing the firm of Blake & Williams, for death by wrongful act. From a judgment rendered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Percy D. Trafford, for appellants.
William J. Griffin, for respondent.

WILLARD BARTLETT, J. The plaintiff's son, a schoolboy, between six and seven years of age, was killed on the 14th day of October, 1895, by falling through a door which opened into a cellar at Public School No. 107 in the city of Brooklyn, out of an alleyway leading from the street into the school yard. This alleyway was used by the school children in large numbers, on their way into the school and out. The deceased lad, Christopher H. Cleary, with a crowd of his fellow pupils, was returning to his classroom after the recess for dinner, on the day of the accident, when he went over to an iron grating which was in front of the cellar door already mentioned, and in some manner leaned or placed his back against it, so that the door opened, and he fell into the cellar, receiving injuries which resulted in his death a few hours later. At this time the firm of Blake & Williams, composed of the defendants, were engaged as steam fitters in fulfilling a contract with the board of education to do certain work upon Public School No. 107. In the course of the work, their employés had occasion to use the cellar; and, on the morning of the day when the accident occurred, they had opened the door through which the boy afterwards fell, for the purpose of removing a pulley. The door had then been apparently closed, but not so securely as to prevent it from being pressed open as it was when the lad fell through. Neither of the defendants was present, but they have been held liable for the death of the plaintiff's son on the ground that their workmen, in the course of their employment at the school, were guilty of negligence in omitting properly to close and secure the door, under the circumstances.

One of these workmen, named Thomas Foley, who was called as a witness by the plaintiff, gave the only definite and specific testimony as to the manner of closing the door when it was last closed before the accident. He said that he latched and bolted one-half, and continued:

"Mr. Corwin, my foreman, called me for something, and I said, 'All right, sir,' and turned off to do it, and, just as I did, I slammed the door. I heard the latch click on the door. Q. You just slammed it, and went away? A. Yes, sir; .and I heard the latch click. Q. You heard a click? A. Yes, sir. Q. You heard some little click in the lock? A. Yes, sir. Q. And you never paid any more attention after that? A. Never paid any more attention. Then I went away. Between the time I closed the door and the time of the accident, I did not see anybody touch the door,—go to the door. * * * I could see any person walk towards the door if they went towards it. I didn't see any one walk towards it."

The foreman to whom this witness referred testified that he told Foley to close the door, but did not think he told him to lock it. The foreman also stated that he then saw Foley go over to the doorway, and close half of it, but he did not see what he did with the other half. Foley himself swore that the foreman had never told him to lock the door, and that there was no key in the door when he closed it.

If these witnesses, or either of them, had had any reason to expect that the door in question was likely to prove a trap for school children unless securely fastened, it might well be held that the foregoing evidence was sufficient to charge them, and therefore their employers, with negligence. I am unable, however, to find anything in this record to show that they were aware of the danger to which the unsecured door might expose the children using the alley or passage on their way to and from school. It does not appear that any of the defendants' workmen had ever seen the alley crowded with children, as it seems to have been on the occasion of the accident, or that they had any knowledge or information that the passageway was liable to be so used as to lead to pressure against the door from without by the passing pupils. The men were eating their dinner in the cellar when the accident occurred, and were not in a position to see the incoming children at that time. If they could reasonably have anticipated that a boy would stop and lean or press against this door, common prudence required that they should see to it that the door was not left so slightly fastened as readily to open, and permit one to be thrown to the cellar floor, which was several feet below the level of the alley; but, in the absence of any observation, experience, or warning to suggest such a possibility, it seems to me that it would be laying down a very stringent rule of liability to hold that they were in duty bound to guard against it. To assume that the door was securely closed because he heard the latch click, as the witness Foley evidently did, was a natural and justifiable assumption, unless there was something to call his attention to the fact that a mistake in this matter might imperil others in life or limb, so that greater caution was necessary. "No one is guilty of negligence by reason of failing to take precautions which no other man would be likely to take under the same circumstances." Shear. & R. Neg.

(4th Ed.) § 11. This seems to me an excellent statement of the rule applicable here. Without other notice or knowledge of the danger than that disclosed by the proof in the case at bar, no one situated as the defendants' workmen were would be likely to take any greater precautions than they did in reference to the closing of the cellar door. While those precautions might have been deemed insufficient if the men had been aware or warned of the possible consequences of not fastening the door securely, they were apparently all that prudence demanded under the circumstances. See Spengeman v. Alter, 7 Misc. Rep. 61, 27 N. Y. Supp. 406. It may be that upon another trial the plaintiff will be able to show that the defendants' employés were sufficiently acquainted with the daily movements of the school children through the alley and near the cellar door to be aware that such an accident as actually occurred, or one of a similar nature, was liable to happen if the door was not firmly secured; but, without such proof, the case, in my opinion, lacks an element which is essential to charge the defendants with negligence.

I think the judgment and order should be reversed, and a new trial granted, with costs to abide the event. All concur, except HATCH, J., dissenting.

HATCH, J. (dissenting). The defendants had a contract for putting in the steam heating apparatus in the basement of Public School Building No. 107, and, at the time when the injury was sustained which is the basis of this action, had been at work at the building for two weeks. There was a double door in the basement, which led into an alleyway. The latter connected with the playground attached to the school, and formed a part of it. These doors extended partially below the surface of the alleyway to the bottom of the basement, and partially above it, being divided at about the center. The doors had been used by the servants of the defendants, from time to time, for the purpose of taking in material used in the construction of the work, and their contiguity and location to the alleyway and playground were apparent upon mere inspection. The doors were usually kept locked by the janitor of the building, and, whenever the defendants desired to use the door, they applied to the janitor to unlock it, or to furnish the key, if the same had not been left in the lock. The fastening of the door was upon the inside. During the time that the defendants were at work in the basement, the school was in session, and the children in attendance thereon passed through this alleyway to reach the playground and enter the building. Upon the morning of the accident the janitor had locked the door, and at about 10 o'clock in the forenoon the defendants opened the same, for the purpose of receiving some material necessary for the prosecution of the work. After thus making use of the doorway, the defendants' foreman directed one of the workmen to close and lock the door. This direction was not obeyed. Only one side was fastened, the other side being left slightly ajar. It remained in this condition until about 1 o'clock, when plaintiff's intestate, a boy about six years old, and

an attendant upon the school, was in the alleyway, waiting for an opportunity to enter the building in his turn, with the other children, when he leaned against the door. The same gave way, and he was precipitated into the basement, receiving injuries from which he subsequently died. The foregoing facts the jury were fairly authorized to find from the evidence offered. The defendants gave no evidence, and the question raised upon this appeal is whether the facts are sufficient, as matter of law, to support the verdict which was rendered.

I think the jury were authorized to find that the defendants knew, or in the exercise of reasonable care ought to have known, the purpose for which the alleyway was used, and the necessity which existed for keeping the door locked. They had made use of the door before this time. They had usually found it locked, and applied to the janitor for the key when they did not find it in the door. The fact was open and patent that the alleyway was a passageway to the school building, and formed a part of the playground. The school was in session, and the children passed through the alleyway in large numbers, and the defendants' foreman knew that the door ought to be kept locked for some purpose. I think it was for the jury to say whether or not the foreman knew that it was necessary to be kept locked for the protection of the children, or, if he did not so know, that, in the exercise of reasonable care, he ought to have known. This was a public school building. Hundreds of children attended it daily. Our common knowledge is that children make use of the playground. They did in this case. The relation which the door occupied to this place was open and apparent, and a person making use of it could not escape such knowledge except he closed his eyes. Under such circumstances it needs no argument to demonstrate that leaving this door unlocked created a trap, made it a dangerous place, and invited just such an accident as happened. This place was perfectly safe when the door was locked. It was safe upon this morning until the defendants interfered with it for their own purposes. Having knowledge of the conditions and surroundings, and the fact that the door was kept locked, a duty was imposed upon the defendants to see that no act of theirs changed this place from that of safety into that of danger. The principle which governs the case is not other or different from that which determined liability in the Beck Case, 68 N. Y. 283, as it seems to me clear that the defendants were chargeable with notice of the purpose for which the alleyway was used, and of the necessity which existed to firmly secure the door.

For these reasons, I am unable to agree with my associates in the conclusion reached by them.