The books are so full of cases to this effect that the citation of authorities in support of the proposition is unnecessary."

In our judgment, the purpose and scope of the sections of the Penal Code above referred to are to control, within the police power of the state for the protection of persons seeking transportation, the agencies within the state through which and with which contracts for transportation may be made, and that the law is free from the constitutional objections taken to it.

The order appealed from should be affirmed, with costs.    All concur.

---

(25 App. Div. 535.)

NELSON v. LEHIGH VAL. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    February 6, 1898.)

1. CARRIERS—NEGLIGENCE.
    The belief of persons in charge of a railway train as to the proper arrangement of chairs in a dining car, based upon experience and such a state of facts as would induce a reasonably prudent person similarly situated, and having reasonable skill for such position, to believe that the course pursued is a proper one, is sufficient to relieve them from the imputation of negligence.

2. SAME.
    The mere happening of an accident is not sufficient to submit to the jury the question of negligence.

3. NEGLIGENCE—QUESTION FOR JURY.
    Negligence is a question for the jury only when the facts and circumstances presented for their consideration would authorize the jury to infer it.

4. CARRIERS—INJURY TO PASSENGER.
    Plaintiff was sitting in defendant's dining car on an unfastened chair, which were usually used on defendant's and other railroads.    In going around a curve, the car gave a sudden lurch, which tipped the chair over backward, injuring plaintiff.    The train was not running at an unusual rate of speed, and defendant's roadbed was in proper condition.    Held, that negligence could not be inferred, and it was error to submit the question to the jury.

5. SAME—WEIGHT OF TESTIMONY.
    Declarations of a parlor-car conductor, who was not managing the train, as to its being late, cannot be given any force as against the testimony of other employés of the road, some of whom testified from the record of the arrival and departure of trains.
    Ward, J., dissenting.

Appeal from trial term.

Action by Elizabeth L. Nelson against the Lehigh Valley Railroad Company for personal injuries.    From a judgment in favor of plaintiff, defendant appeals.    Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Joseph W. Taylor, for appellant.
George C. Carnahan, for respondent.

GREEN, J.    This action was brought to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant in the operation of its railroad, and resulted in a verdict for

the plaintiff for $3,500.   The plaintiff took passage upon one of the defendant's trains from Rochester to Jersey City.   Shortly after passing Mauch Chunk, and while the plaintiff and her friends were sitting upon unfastened chairs in the dining car, partaking of their dinner, the car gave a violent lurch, the chair in which she was sitting tipped, and she fell or was thrown diagonally backward, and struck upon her buttocks in the aisle of the car.   According to the testimony of the plaintiff and several of her friends, the train was going "very fast," and the lurch of the car and the accident occurred while the train was going around "a sharp curve," or "very sharp curve."   The plaintiff says that she was sitting at a table in the dining car with three other women; that she and Miss Barnes were facing the engine, she (herself) being next to the aisle, and the others were sitting at the opposite side of the table, with their backs to the engine.   In describing the accident, she said:

"Perhaps we had been in the car fifteen minutes when there was a severe lurch, and I was thrown forcibly against the table, the table striking me in the abdomen in the center.   I grabbed at the table, but my hand slipped off, and just a second afterwards there was another lurch, and I was thrown back.   The chair tipped directly back and diagonally, and I went back diagonally across the car in a sitting posture, and my head struck the side of the car or something; it was hurt, anyway.   The force of the blow fell on the buttocks on the left-hand side with greater force, and at the end of the spine, but more towards the left hip than the right.   I should think I was thrown four or five feet from the chair.   Those chairs were not fastened.   Miss Barnes was clinging to the table.   She had taken hold of my dress sleeve, to protect me from falling; but her hand slipped off, and I sensed that she either let go or I was yanked out of her hand.   As I sat on the floor, I noticed the rest having a general shaking up, and laughing, and trying to get back to their places."

The plaintiff's friends also testified that they were greatly disturbed and shaken up by the lurch of the car, but none of them were thrown or fell to the floor.   Miss Barnes says they were all thrown violently against the table, and then back; that, in reaching out to save the plaintiff, she found that she was going to fall, and so clutched the table to save herself, and then looked around, and saw the plaintiff on the floor.   Mrs. Alghenes says she saved herself from being thrown by grasping her chair, and held out her arm to save her daughter, who was thrown against her, from falling.   Miss A. says she remembers going half onto her mother's chair.   The Reverend Kiernan testified:

"There was a noticeable movement of the car.   I do not know that I can give a description of it any more than to say that I felt the movement of the car at the time.   It gave something of a shaking up as we passed around the curve.   I was not thrown out of my chair.   The train was going fast.   I call it a sharp curve."

It also appears from the testimony of Miss Barnes that they had been disturbed in their seats by the lurching of the car prior to this.   "There was nothing unusual happened, except we were thrown about considerably while we were at the table, until this very severe lurch came."   In response to the question as to the lurch or movement of the car as compared with its movement at other times during the journey, she thought it was the sharpest that they had experienced; it was a heavier and stronger movement, and threw them around more than any other.   Evidently, therefore, this particular lurch did not come wholly

without warning. A little stronger lurch might reasonably be expected.

It was shown by the defendant's roadmaster that the highest curve on the road between Mauch Chunk and Allentown, between which the accident occurred, is a curve of 7½ degrees, and that is not regarded as a sharp curve. The train master says that he would call a 14 or 15 degree curve a very sharp one. It was testified that a railroad train may run on a track having a 7½-degree curve, with the tracks in good condition, from 55 to 60 miles an hour; on a 6-degree curve, the safe rate of speed is 60 miles; on a 5-degree curve, 60 to 65 miles; on a 4-degree curve, 70 miles at least; and a 3-degree curve, 70 miles or more. The train conductor testified that the train left Mauch Chunk 11 minutes behind schedule time; that it was running all right; and that he was not informed of the accident. The train master and the train operator testified that the schedule time for leaving Mauch Chunk was 6:05, and for arriving at Easton was 7:25; that the distance between these places is 45 miles, and the schedule time is 41 miles per hour. The witnesses produced the record showing the movement of this train, and testified that it left Mauch Chunk at 6:17, or 12 minutes late; that it made up 3 minutes in the run of 28 miles to Allentown, where it arrived at 6:53, and reached Easton at 7:27, or 2 minutes late, having made up 7 minutes in the last 17 miles. From this it would appear that the average rate of speed was about 46 miles per hour, though these witnesses testified that the rate between Mauch Chunk and Allentown was 50 miles per hour. The respondent makes the contention that an average rate of 50 miles an hour means that at some points the speed was much slower and at other points much faster than the average; that in gathering speed at the outset, and in slowing down at various points, the speed was much less than 50 miles per hour, while, to make up the average, the speed at other points must have been fully 55 miles per hour,—that is, the danger limit was reached; and that, upon this state of the evidence, the questions, what was the rate of speed, and whether that speed was dangerous, could not be taken from the jury. It appears that there are many curves on this road between Mauch Chunk and Easton. That the accident could not have happened at the highest curve (7½ degrees), situated at about 6 or 7 miles east of Mauch Chunk, is made apparent from the testimony of plaintiff's witnesses. And, if the train was running at a high rate of speed, it is evident that these occupants of the car were unable to form a correct opinion as to whether the curve was "a sharp one," or "a very sharp" curve. Their opinion is evidently founded upon the effect produced by the movement of the car.

The defendant proved that it had used such chairs in its dining cars for years, both before and since this occurrence, without accident of any kind; that the same kind of chairs are in use upon various other railroads; that the equipment of dining cars with unfastened chairs is the more modern method, and is generally regarded as the most satisfactory mode of equipment. Evidence was also given tending to show that trains have been constantly running at the same or a higher rate of speed than that at which the train was running at the time of the accident, not only on that part of the road, but

also on other parts where the grades are heavier and the curves sharper. The circumstances of the case do not support the plaintiff's statement that she was thrown four or five feet from the chair, nor three or four feet, as Miss Barnes testified. The witnesses testified that, immediately after the accident, she was sitting in the aisle; and, as appellant points out, the intervening tables would prevent her head striking the opposite side of the car. Indeed, it is not clearly apparent that she was thrown at all. She was unable to maintain the equilibrium of the body, the chair tipped over, and she fell to the floor. None of the light articles resting on the table were thrown off, and the Reverend Kiernan was only able to say that he felt a noticeable movement of the car. Plaintiff's physician testified that she had contusions on the abdomen and back; inflammation of the uterus and ovarian tubes and the organs of the pelvis; that the coccyx was inflamed and bruised; that there was chronic inflammation of the joint between the sacrum and the ilium, causing pain when the weight of the body rested upon the left foot; and that peritonitis and cellulitis ensued from the injury.

The plaintiff bases her right to recover upon the ground that the defendant was guilty of negligence in running the train at a high rate of speed around a sharp curve, knowing that she was seated in an unfastened chair; that the concurrence of these three elements working together, viz. the speed of the train, the curvature of the tracks, and the unfastened chairs, furnished some evidence of negligence for the consideration of the jury; that the speed was excessive and negligent under the circumstances; that the effect produced was evidence of this. Granting this, it was not difficult to foresee what the verdict would be. It is conceded that no imputation of negligence arises from the use of unfastened chairs, or from the fact of the existence of these curves on the road; that these conditions, created by the act of the defendant, were in themselves considered proper and safe enough. It is to be assumed, therefore, that the passengers in the dining car were riding in a safe place or position; but the contention is that their position was rendered unsafe by the speed of the train, and the jury was at liberty to infer that the servants of the company were negligent in failing to foresee that injurious consequences were likely to result in the long run, and to guard against them; in other words, that if, by the movement or lurching of the car, a passenger is shaken up, and loses his equilibrium, and is precipitated to the floor by the tipping of his chair, the jury may find, inferentially, that reasonably prudent employés would have anticipated that the rate of speed at which the train was running at the time was likely to result in injury to passengers seated in the car. The jury, therefore, was at liberty to draw the inference from the happening of this accident that the rate of speed was dangerous, under the circumstances existing, and the company's servants were negligent in not knowing that it was so. That the rate of speed was lawful and proper, in so far as the condition of the track and the existence of the curves is concerned, is undoubted; but the assertion is made that it was negligently excessive in respect of the passengers in the dining car, who were apparently entitled to a lower

rate of speed for their safety. That raises the inquiry: What is the proper rate of speed for a train going around a curve, in respect of passengers seated upon unfastened chairs? This is a matter of considerable uncertainty, though the jury has answered that the rate of speed was improper on this occasion, because one of the passengers was precipitated to the floor in the manner described, and sustained consequential injuries. But the real question for determination is whether negligence may be imputed to the company's servants in failing or refusing to see that injurious consequences were likely to result from the speed of the train, in ordinary natural sequence. Where there is no direct evidence of negligence, the question what a reasonably prudent man might foresee is of importance in considering the question whether there is evidence for the jury or not. If the injury is one of the incidents of improper conduct on the part of the person charged, he may not relieve himself by proof that he did not foresee it, because it was his duty to have marshaled the probabilities, and he is liable for negligence in omitting to do so. Still, the foreseeing of a harm as remotely and slightly probable does not involve the imputation of such a harm, for there is nothing that we can do that may not remotely produce some harm; and there is a certain amount of risk incident to railroad travel, which the traveler knowingly assumes. And, although there was a slight chance that an injury would result, was the company or its servants negligent or heedless not to provide against such chance? The company was not bound to provide against all circumstances that might result from the running of its trains, and is not responsible for all the unforeseen consequences incidental to their management and operation. Still, it is bound to use the utmost care consistent with the nature and extent of its business to guard against all danger to passengers which it can reasonably anticipate. But its agents are not chargeable with negligence by reason of failing to take precautions which no other man would be likely to take under the same circumstances. Cleary v. Blake, 14 App. Div. 602, 605, 43 N. Y. Supp. 1115.

The court below has suggested that either of these precautions should have been taken: The slowing of the train, or a warning to passengers. Counsel for the appellant makes the pertinent inquiry, how was it to be ascertained whether such precautions were necessary? The answer given is, by experience; and, when experience had demonstrated that trains could be run with safety at the rate of speed at which this train was running, then, obviously, the omission to take any of these precautions was no evidence of negligence; that the accident happened while the defendant was operating its train in the usual and customary method, shown by long experience to be perfectly safe. As a general proposition, the way established by long experience of doing a thing is, in law, the safe and prudent way of doing that thing. Illustrations of the application of this principle may be found in Dougan v. Transportation Co., 56 N. Y. 1; Cleveland v. Steam Co., 68 N. Y. 306; Burke v. Witherbee, 98 N. Y. 563; Lafflin v. Railroad Co., 106 N. Y. 136, 12 N. E. 599; and various other cases.

In Loftus v. Ferry Co., 84 N. Y. 455, the court said:

"If the defendant ought to have foreseen that such an accident might happen, or if such an accident could reasonably have been anticipated, the omission to provide against it would be negligence. But the facts rebut any inference of negligence on this ground. The company had the experience of years, certifying to the sufficiency of the guards. The company had no reason to expect an accident like this, and the arrangements made were such as experience had, up to that time, shown to be safe and suitable, and sufficient to meet the requirements of its duty."

Absolute safety is unattainable, and passenger carriers are not insurers. They are liable for the consequences, not of danger, but of negligence. Titus v. Railroad Co., 136 Pa. St. 618, 20 Atl. 517. They are expected to anticipate and guard against all reasonable contingencies, but they are not expected to anticipate and guard against that which no reasonable man would expect to occur. The belief of persons in charge of a railway train as to what is proper for them to do, based upon experience and such a state of facts and circumstances as would induce a reasonably prudent and cautious person similarly situated, and having reasonable skill for such position, to believe that the course pursued is a proper one, is sufficient to relieve them from the imputation of negligences. It is difficult to perceive how the jury, composed, we presume, of persons unfamiliar with the running of railway trains, were in a position to determine the proper and safe rate of speed for a train going around these curves, so as not to endanger passengers sitting upon unfastened chairs, and then conclude that a greater rate must have been negligently excessive. From the mere fact that such an accident occurred resulting in injurious consequences to the person, the jury has drawn the conclusion that the employés concerned in the operation of the train ought to have foreseen the result as likely to occur, and were guilty of negligence in failing or refusing to see the evil consequences. But it does not follow as a logical conclusion that, because a passenger is shaken or disturbed in his seat by the movement or lurching of a car running upon a curved road, the imputation of negligence must necessarily arise. That a passenger may, in a greater or less degree, be shaken or jostled, under such circumstances, is a matter of common knowledge and experience. As an ordinary incident to railroad travel, it is a consequence of the operation of counteracting forces, and is to be expected to occur. The courts must take notice of that which is a matter of common knowledge or experience, and when the evidence fails to disclose the lack of the required measure of care, as judged by the light of such knowledge, in view of the attendant circumstances, it ought not to be left to the conjecture of a jury. The plaintiff must give some proof from which there may be a logical inference of negligence, and the mere happening of the accident is not sufficient for the jury. After the occurrence, it is easy to point out the precaution which, if it had been taken, would have prevented it; but that of itself may not warrant a charge of negligence in not foreseeing its possible or probable happening and guarding against a remote or slight contingency. Negligence is ordinarily a question of fact for the jury, but only when the facts and circumstances presented for their consideration would authorize a

jury to infer it.    Sutton v. Railroad Co., 66 N. Y. 249.    And no recovery can be had when the evidence is equally consistent with the absence as with the existence of negligence in the defendant, or where, in other words, it is left doubtful from the evidence whether there has been negligence or not.    "In such case the party affirming negligence has altogether failed to establish it; and this is a rule which ought never to be lost sight of.    He must prove something which warrants that inference, and not leave his case upon facts just as consistent with care and prudence as with the opposite."    Baulec v. Railroad Co., 59 N. Y. 357, 366; Hayes v. Railroad Co., 97 N. Y. 259; Dwight v. Insurance Co., 103 N. Y. 359, 8 N. E. 654.    And "every person who has any experience in courts of justice knows very well that a case of this sort could only be submitted to a jury with one result.    At most, the jury could only conjecture that the defendant might have been wanting in the care and caution proper to be exercised in such a case"; and, if so, the case should have been withheld from the jury.    59 N. Y. 366.

Any reasonably prudent railway servant might well have failed to anticipate such occurrence of circumstances as is here described. Defendant's employés did not, it seems, anticipate the evil consequences that might result from the use of unfastened chairs at the rate of speed the train was running; and we do not perceive that the circumstances warrant the inference that they were negligent in not foreseeing that such an accident was likely to occur, or that it would be attended with any serious consequences even though it should occur.    A reasonable expectation is nothing more than an expectation that some harm or injury as that under investigation will occur in the long run from a series of negligences as those with which the defendant is charged.    Whart. Neg. § 78.    And, since the law will not presume negligence, it will be necessary to a recovery against the carrier, in every case in which his liability depends upon its existence, for the plaintiff to prove it, either positively or by the existence of facts from which it may be reasonably presumed.    Hutch. Carr. § 798.    It is true that where an injury is preceded by several independent conditions, each one of which is an essential antecedent of the injury, the party by whose negligence one of these antecedents has been produced may be held responsible for such injury.    But is it a reasonable presumption that where a train is running at a safe rate of speed around a curve, and one of the passengers is shaken up and tipped from her chair in the manner described, the servants of the company must have been negligent in running at such rate of speed, under the circumstances?    The unfastened chair was one of the contributing causes or conditions without which the accident would not have happened, and for the existence of which no negligence is imputable.    Was there any negligence in the use of such chairs while going around the curves at the rate of speed shown by the evidence?    We are unable to perceive that the evidence and all the circumstances of the case are of such a character as to warrant a jury in finding, inferentially, that the servants of the company were negligent, and that the injury was the result, not merely of accident without negligence, but of negligence itself.    In every case, before

the evidence is left to the jury, there is a preliminary question for the judge, not literally whether there is no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party upon whom the onus of proof rests. This preliminary question, we are of the opinion, was erroneously decided by the trial court.

In respect to the propositions of law quoted by the respondent from the many cases cited, it is sufficient to remark that they must be taken and considered in connection with the facts and circumstances which warranted their application, and from which the injury complained of in each furnished the basis for a presumption or inference of negligence. Where the agency by which the harm is done is conducted with proper precautions, and is itself one of the necessary incidents of our social life, the persons concerned in managing such agencies are not liable for injuries incidentally inflicted on others. Generally speaking, there may be no reasonable apprehension of danger to result to passengers seated in the car, from the movement of the train in passing over curves in the road. Lansing y. Railroad Co., 16 App. Div. 148, 45 N. Y. Supp. 120, per Bradley, J. The case of Black v. Railroad Co., 2 App. Div. 387, 37 N. Y. Supp. 830, may be considered as an authority of some pertinency upon this proposition.

It may be proper and pertinent to allude briefly to the evidence of plaintiff to the effect that the conductor of the parlor car said that the train was one hour behind time. This, of course, was given by plaintiff as bearing upon the question that the train was being run at a high rate of speed. I do not see that this is of any particular importance, as it is admitted that the speed was 50 or 51 miles per hour (plaintiff says 55 miles), which certainly was a good speed upon a curving road. Assuming that this evidence was admissible and properly in the case, it does not necessarily affect the force of the other evidence as to the speed of the train. It does not show that, because the train was so far behind, therefore the speed must have been much higher and dangerous; i. e. in respect of running off the track. We cannot arbitrarily disregard the testimony of other employés upon the road, and especially those who testified from the record as to the arrival and departure of the train and the time made between the places mentioned. The mere declarations of a parlor-car conductor who was not running or managing the train cannot be given much, if any, force and effect as against the sworn testimony of all these other employés of the road.

The plaintiff also invoked in aid of her contention the rule, "res ipsa loquitur." There is contained in the opinion of Railroad Co. v. MacKinney, 124 Pa. St. 470, 17 Atl. 16, a statement of the principle as to the presumption of negligence and the cases to which it is applicable:

"The general rule undoubtedly is that the party who alleges negligence as the basis of a claim for damages must prove the fact alleged, and the extent of the injury, if more than nominal damages are claimed. * * * If a passenger seated in a railroad car is injured in a collision, or by the upsetting of the car, the breaking of a wheel, axle, or other part of the machinery, he is not required to do more, in the first instance, than prove the fact, and show the nature and extent of the injury. A prima facie case for plaintiff is thus made out,

and the onus is cast on the carrier to disprove negligence. It is reasonable that it should be so, because the company has in its possession and under its control, almost exclusively, the means of knowing what occasioned the injury, and of explaining how it occurred, while, as a general rule, the passenger is destitute of all knowledge that would enable him to present the facts, and fasten the negligence on the company in case it really existed. The contract to carry implies that the company is provided with a safe and sufficient road; that its cars are staunch and road-worthy; that every precaution which human skill, prudence, and foresight could suggest has been taken to guard against every apparent danger that may beset the passenger; and that the servants in charge are tried, sober, and competent men. When a passenger is injured by an accident connected with the means or appliances of transportation, there naturally arises a presumption that it must have resulted from some negligent act of omission or commission of the company or some of its employés, because, without some such negligence, it is very improbable that the accident would have occurred. That is the basis upon which the presumption rests, and it stands as proof of negligence until it is successfully rebutted. It arises not from the naked fact that an injury has been inflicted but from the cause of the injury, or from other circumstances attending it."

Considering the evidence in the case before us in the light of this clear and plain statement of the principle as to the presumption of negligence, it is clearly apparent that that principle invoked by the plaintiff is not applicable to the case at bar.

It follows from what has been said that the court erred in not directing a verdict for the defendant; that the verdict of the jury was not justified by the evidence; and that the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event of the action. All concurred, except WARD, J., who dissents.