(89 App. Div. 93.)

## MURPHY v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. December 24, 1903.)

1. MUNICIPAL CORPORATION—EXCAVATION IN STREET—INJURY TO GAS MAIN—DECEDENT'S SUFFOCATION IN MANHOLE—NEGLIGENCE.

A city is not chargeable with negligence in failing to anticipate that through its negligent filling of an excavation beneath a gas main the ground would sink, the gas main break in the wall of an adjacent manhole, and the gas escape into the manhole, and flow along a conduit for electric wires, filling manholes for two blocks; that more than two months later two men searching for the leak would open a manhole two blocks distant; that one of them would enter, and be threatened with suffocation; and that, in order to rescue him, his companion would descend, be suffocated, and so meet his death.

2. SAME—PROXIMATE CAUSE.

Even if the city were chargeable with negligence, it was not the proximate cause of decedent's death.

Appeal from Trial Term, New York County.

Action by Mary J. Murphy, as administratrix of the goods, chattels, and credits of Cornelius J. Murphy, deceased, against the city of New York and others. From a judgment dismissing the complaint at the close of plaintiff's case, she appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Herbert C. Smyth, for appellant.
Theodore Connoly, for respondents.

LAUGHLIN, J. This is a statutory action to recover for the death of Cornelius J. Murphy. On the 27th day of August, 1901, the decedent, who was in the employ of the Empire City Subway Company, with one John Smith, who was an inspector for the Consolidated Gas Company, were looking for a gas leak. They removed the cover of a manhole at the corner of Thirteenth street and Fourth avenue, and Smith descended a ladder for the purpose of discovering from which direction the gas was coming. The evidence tends to show that he was suddenly overcome by the gas, and that the decedent, after motioning and shouting for help, descended the ladder

in an attempt to rescue his companion, and he in turn was overcome by the gas, and died shortly thereafter on the same day. The plaintiff's theory of the case is that this escape of the gas was due to a break in the main at the corner of Fourteenth street and Third avenue, and that the break in the gas main was caused by the negligence of the defendant. It was shown that on the 5th day of June preceding the accident the department of water supply was repairing a 12-inch water main in Third avenue at the intersection of Fourteenth street, and made an excavation in the street at that point for that purpose. There was a manhole, constructed of brick, at the southwest corner of Fourteenth street and Third avenue, and the inference is, although the fact does not directly appear that this was owned and controlled by the subway company. A 6-inch cast-iron main passed through the wall of this manhole between 24 and 30 inches below the surface of the street, and was cemented to and held firmly by the wall, and extended south therefrom. This gas pipe pitched somewhat toward the north. The excavation was 14 or 15 feet long and 5 feet deep, extending south from the manhole, and it uncovered the gas pipe. The trench was refilled under the direction of the foreman of water supply on the 15th day of June, 1901, and the paving stones were relaid. The plaintiff gave evidence tending to show that on account of this gas pipe being held firmly in the wall of the manhole in refilling the trench it was not sufficient to tamp the earth under it, but the pipe should have been supported by wooden blocks or wedges at about 18 inches or 2 feet from the manhole, and again at a distance of about 5 feet from the manhole, in order to guard against the settling of the earth, and that this was not done. After the accident it was discovered that this gas main had broken off in the wall of the manhole about two inches inside the outer surface, and that the greatest opening was at the top. There was also evidence that the surface of the street had settled somewhat over the excavation. Upon this evidence the plaintiff contends that the breaking of the pipe was owing to the negligent manner in which the excavation was refilled, and that it resulted either from the jarring of traffic or the settling of the earth. When the break in the pipe was discovered, the gas was escaping along the line of the pipe through the outer wall. It does not appear by express evidence that the gas was escaping into the manhole through the inner wall. There is evidence to the effect that the gas main passed through the center of the manhole. An electric light conduit three inches in diameter, in which were contained cables carrying electric light wires, extended from this manhole along Fourteenth street to a manhole opposite Irving Place, and from that manhole to a manhole at the junction of Fourth avenue and Fourteenth street, and from there down Fourth avenue to the manhole at the junction of Fourth avenue and Thirteenth street, where the accident occurred. Neither the break in this pipe nor any leak of gas was discovered until the day of the accident. On the morning of that day Smith's assistant foreman, in riding downtown on a Fourth avenue car, smelled gas as the car was passing over Fourteenth street. On arriving at his place of business, the subway company

was communicated with, and Smith was sent to meet a subway repair wagon with a view to discovering the leak. He met the decedent at Fourteenth street and Fourth avenue. It appears that the covers to the manholes were locked, and the decedent had the key. He unlocked the cover to the manhole at the intersection of Fourth avenue and Fourteenth street, and they inserted a ladder upon which Smith descended. He discovered an odor of gas and found that there was considerable "water and stuff" in the manhole. Smith then requested the decedent to have the other employés of the subway who were on the wagon clean out the manhole. The decedent and Smith then went to the manhole at Thirteenth street and Fourth avenue. They unlocked and removed the cover of this manhole. They discovered the smell of gas, and inserted a ladder, and Smith descended for the purpose of ascertaining which way it was flowing. As he descended the ladder, he was at once overcome, and, although he recovered, he was unable to recollect how far he descended before losing consciousness. After the accident the assistant foreman of the gas company made a further investigation to ascertain the source of the leak. He discovered a strong odor of gas at the point of the accident, and had an excavation made, but found no leak in the pipe. He discovered a stronger odor of gas at Fourteenth street and Fourth avenue, and caused an excavation to be made there, but found no leak. He then discovered a stronger odor of gas at the manhole at the southwesterly corner of Third avenue and Fourteenth street, and caused an excavation to be made there, with the result that the break in the pipe was discovered. It appears that there is another manhole in Fourteenth street toward the southeasterly side of Third avenue. The plaintiff gave evidence tending to show that the cover of this manhole was removed, and no odor of gas was discovered. There was no express evidence to show that the two manholes at the intersection of Third avenue and Fourteenth street were connected by electric light conduits, but, if they were not, it is difficult to see the materiality of this evidence.

We deem it unnecessary to consider the sufficiency of the evidence to justify the inference that the gas which asphyxiated the decedent came from the break in the pipe two blocks distant, or to decide whether the city would be liable for the negligence of the department of water supply in failing to properly support the gas main, or whether there was contributory negligence on the part of Smith which constituted an intervening cause of the decedent's death notwithstanding the fact that he himself could not be chargeable with contributory negligence as matter of law in attempting to rescue a fellow being in imminent peril, or whether such intervening cause would absolve the defendant from liability. Assuming, without deciding, that the city is chargeable with negligence on account of the manner in which the trench was refilled, and that such negligence resulted in the breaking of the gas main, and that the gas which caused the death of decedent came from such break, yet we are of opinion that the accident was one which, in the exercise of reasonable care, could not have been foreseen, and that the negligence on the part of the city, if any, was not the proximate cause thereof. If the city

be responsible for the failure of the water department to properly support the gas main, it may be that it should have foreseen that the gas pipe might break, and thus cause a leak of gas. If the gas pipe were to break from such cause, it would ordinarily break at the outer wall of the manhole or outside that point. In order to charge the city with responsibility, it must be held that it should have foreseen not only that the break would occur, but that it would occur at such a point that the gas would escape into the manhole. Not only this, but that the gas would then follow this small electric light conduit from manhole to manhole for blocks, filling the respective manholes, and passing on, and then that some day, months in the future, some one, with knowledge of the existence of the gas there, would descend into the manhole, and become suffocated by the gas, so that a companion, moved by the instincts of humanity, would rush to his rescue and lose his life. This would be charging the city with greater foresight than any adjudicated case which has been cited or which we have found has imposed in holding a defendant liable for negligence.

It is well settled that a person cannot be held liable for negligence in failing to guard against an accident that could not, in the exercise of ordinary care, have been foreseen. Dougan v. Champlain Transportation Co., 56 N. Y. 1; Hubbell v. City of Yonkers, 104 N. Y. 434, 10 N. E. 858, 58 Am. Rep. 522; Cleveland v. N. Y. Steamboat Co., 125 N. Y. 299, 26 N. E. 327; Ayers v. Rochester Ry. Co., 156 N. Y. 104, 50 N. E. 960; Lafflin v. Buffalo & S. W. R. R. Co., 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep. 433; McGrell v. Buffalo Office Building Co., 153 N. Y. 265, 47 N. E. 305; Nelson v. Lehigh Valley, 25 App. Div. 535, 50 N. Y. Supp. 63. It is equally well settled that, even though a person is guilty of negligence, he is not responsible for consequences of his negligent act or omission which could not, in the exercise of reasonable care, have been foreseen upon the theory that in such case the negligence is not the proximate cause. In Hoffman v. King, 160 N. Y. 618, 627, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715, "proximate cause" is defined as follows: "The damage must be the proximate result of the negligent act. It must be such as the ordinary mind would reasonably expect as a probable result of the act; otherwise no liability exists." See, also, Schoepflin v. Coffey, 162 N. Y. 12, 18, 56 N. E. 502, and Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216. The accident did not result directly from such failure. There were intervening causes, and there was a long period of intervening time. If the gas escaped into the public highway, and by explosion or otherwise injured some one there, or if the gas escaped directly into the adjacent premises, and a person was injured thereby, perhaps the failure to properly support the pipe might be said to be the proximate cause; but here, if the gas came from this break, after escaping it found its way into this manhole, over which the city had no control. and then it followed these electric light conduits, over which the city had no control, from manhole to manhole. It did not injure the manholes or the conduits, nor did it explode, but the decedent uncovers the manhole one avenue block and one street block distant, and, with knowledge on

his part and on the part of Smith of the existence of gas, Smith descends, and is overcome, and the decedent loses his life in an attempt to rescue him.

We are of opinion that the decisions in the cases of fires negli·· gently caused are applicable here. In those cases it is well settled that a person who negligently starts a fire on another's land or building is only responsible for the damages caused on those premises; and, even though the condition of the wind, weather, and adjacent premises is such that the fire will spread upon adjacent premises, the damage caused thereon is not the proximate result of the original negligent act. In Hoffman v. King, supra, Judge Haight, writing for the court, in reaffirming this rule, says:

"No man is able to answer for all the remote consequences of his acts, and those for whom he is responsible. Hence the wisdom of the rule of proximate cause, which, as defined by Webster, is that which immediately precedes and produces the effect. The fire set by the defendant did not immediately precede the fire upon the plaintiff's land. Other lands intervened, covered with inflammable material, over which the defendant had no control, and without which the fire could not have extended upon plaintiff's premises. The drought, atmosphere, and wind were the principal agents assisting the fire in its work of destruction, and were the intervening causes of the damage. It is unfortunate for the plaintiff, but we think her damage was the remote, and not the proximate, result of the defendant's fire."

It follows, therefore, that the judgment should be affirmed, with costs. All concur.