CARRIERS—INJURY TO PASSENGER—EVIDENCE—SUFFICIENCY.

> In an action against a street railway company for injuries to a passenger, plaintiff testified that she had stood up preparatory to alighting, and signaled the conductor, when the car gave a sudden jerk that "knocked her somewhere," after which she had no further remembrance, and it appeared that she had received traumatic injuries. *Held*, that the evidence was sufficient to raise a presumption of negligence.
>
> [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, § 1286.]

.   Jenks, J., dissenting.

, Appeal from Trial Term, Nassau County.

Action by Mary Lomas against the New York City Railway Company.   From a judgment in favor of plaintiff, defendant appeals.   Reversed.

. Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Herbert R. Limburger, for appellant.

Anthony J. Ernest (Bayard H. Ames, on the brief), for respondent.

HOOKER, J.   In this action of negligence by passenger against common carrier, based upon the negligent operation of defendant's street car, the plaintiff was nonsuited.   She entered the car at 116th street and Eighth avenue.   With her was her, little grandson, three years old.   The open trolley car was comfortably filled, but not crowded, and the plaintiff was riding at the right hand or outer end of the seat, with the child between her and the extreme outer edge thereof.   Intending to alight at Sixty-Fifth street, she raised the child on his feet on the seat as the car passed Sixty-Sixth street, stood up, and, putting her arm around him, looked toward the conductor, and signaled him to stop at Sixty-Fifth street.   She saw him then put up his arm, and she described what then happened thus:

> "The right hand clutched the boy and the right hand on the side.   The next thing that I can remember is that I could feel a big shock, a big jerk—a big shock.   It shook me.   Q. What shook you, madam?   A. Something that the car jerked, as though it was lifted up, as though the car was lifted up and shook me—knocked me over—and that is all I know about that.   * * * I first stood up to signal him when I had just crossed 66th street.   I remained standing until I fell off the car.   * * *   Q. You don't know whether you fell off that car or not?   A. No; I don't know.   I only felt a big jerk, and I went at once.   * * *   Q. And was there any motion that you felt of the car?   A. Just after I saw the conductor put up his hand, that was the motion I felt—a big jerk—and it knocked me somewhere, I don't know.   I remember the speed of the car.   * * *   Q. Do you remember getting off that car at all?   A. No; I don't remember anything after being in it.   Q. You don't remember after being in the car?   A. In the car.   Q. By that you mean nothing after signaling the conductor?   A. Oh, no, sir; after I got thrown—when the big lurch I got, I don't remember anything else."

The respondent relies especially upon the proposition that there is no evidence to show that the defendant was negligent, or that such assumed negligence was the proximate cause of plaintiff's injuries. We think it a reasonable inference, however, from the evidence of the

plaintiff to which attention has been called, that she fell from the violent jerking of the car, and it can matter little whether in her fall she struck her head against a part of the car or the pavement itself. The theory of the cases is that the negligence consists in so operating trains as to deprive passengers of their equilibrium, and to throw them over while standing where they have a right to stand in the vehicle of the common carrier. The injury to plaintiff's head is clearly established to have been traumatic. Soon after the accident the plaintiff's son found her on the sidewalk about opposite to the place where the car experienced the sudden and severe jolt, and he found near the southbound track, between it and the curbstone, traces of blood. It is evident that the plaintiff lost consciousness at once upon her falling, and hence it is of course impossible for her to tell where she fell, and whether she received her injuries by coming in contact with some part of the car or some object exterior to it. But the defendant can have nothing by this failure of the plaintiff to give the detail after she was rendered unconscious, for what she tells of the accident up to the time she was rendered so is sufficient, if true, to establish the defendant's negligence, and this should have taken the case to the jury.

In Grotsch v. Steinway Ry. Co., 19 App. Div. 130, 45 N. Y. Supp. 1075, the court said:

"As to the starting of the car, the proof of negligence was, beyond doubt, such as to require the submission of the question to the jury. The testimony is abundant upon that subject. Several witnesses testify that the car was started with great violence, and the inference is fair that that violence could not have been the result of anything else than the improper application of the power to move the car. It was so great that several of the passengers inside the car were thrown on the floor. * * * That this must have been the result of negligence is the reasonable inference."

In Miles v. King, 18 App. Div. 41, 45 N. Y. Supp. 379, where, as the train was coming into the station, and as plaintiff stood in the aisle, she experienced a violent jerk of the train, producing a fracture of her leg, the court said:

"We are sensible that, in the operation of railroad trains, there must be more or less jarring, jerking, and sudden movements of the train, which are a necessary concomitant to their operation at all, and for which no right of action lies even though injury results. What movements of trains are necessary and what are unnecessary may be at times difficult of determination, and must rest for solution upon the facts of the particular case. In the present instance we are not able to see that the management of this train, under the circumstances, was so far necessary, or such as might reasonably be expected, as to make its solution a question of law for the court. On the contrary, we think that it became a question of fact for the jury, and should have been left to them. The objection that no proof exists to show that the injury was inflicted by the servants of the defendants, or upon a road controlled and operated by them, is sufficiently answered by the authority of the Wylde Case [53 N. Y. 156], supra."

In Sheeron v. Coney Island & Brooklyn R. R. Co., 78 App. Div. 476, 79 N. Y. Supp. 752, the court said:

"There was testimony of passengers and bystanders that the car crossed Schermerhorn street without stopping; that after crossing it slowed up a little, and then suddenly started quickly, with a jerk sufficient to throw standing passengers off their footing and against the seats. Sheeron's fall from the car was coincident with the sudden jerk and the accelerated speed of the car.

This evidence, within the principle announced in the cases above cited, required the submission of the case to the jury, and the dismissal of the complaint was error."

Gilmore v. Brooklyn Heights R. R. Co., 6 App. Div. 117, 39 N. Y. Supp. 417; Dochtermann v. Brooklyn Heights R. R. Co., 32 App. Div. 13, 52 N. Y. Supp. 1051, affirmed 164 N. Y. 586, 58 N. E. 1087; Hassen v. Nassau Electric R. R. Co., 34 App. Div. 72, 53 N. Y. Supp. 1069; Brainard v. Nassau Electric R. R. Co., 44 App. Div. 613, 61 N. Y. Supp. 74; Harty v. N. Y. & Queens Co. R. Co., 95 App. Div. 119, 88 N. Y. Supp. 422—hold the same doctrine.

The respondent asserts that Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, is authority to the contrary, and quotes this language of Judge Cullen:

"If a passenger in a car is injured by striking the seat in front of him, that, of itself, authorizes no inference of negligence. If it be shown, however, that he was precipitated against the seat by reason of the train coming in collision with another train, or in consequence of the car being derailed, the presumption of negligence arises. The 'res,' therefore, includes the attending circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue—the defendant's negligence. * * * But the question in every case is the same whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue."

The cases which have been referred to are not at war with this principle, but are in strict harmony with it. If it had appeared from the record merely that this plaintiff had received a violent injury to the head as she sat on her seat, or even stood with her arm around her grandson, no negligence on the part of the defendant could, of course, have been imputable; but the case goes further than that, and shows the cause of plaintiff's being knocked over to have been an unusually severe jolt, jar, or jerk of the car, which impressed the plaintiff as though the car were being lifted up, and which came with such suddenness that she was thrown down. The law imposes upon common carriers the duty to exercise the highest degree of care and caution in the operation of their trains that human skill and prudence can suggest, and it is not the ordinary thing, when that degree of care is being observed, to jolt or jerk a car with that excessive degree of violence which is inferable from the evidence of the plaintiff. The evidence in the record was sufficient to impose the burden upon the defendant of explaining the manner of the accident, to show, if it could, freedom from negligence on its part.

Judgment reversed, and new trial granted.

Judgment reversed, and new trial granted; costs to abide the event. All concur, except JENKS, J., who dissents.