FREDA BERGMAN, Plaintiff, *v.* BROOKLYN & QUEENS TRANSIT CORPORATION, Defendant.

Municipal Court of New York, Borough of Manhattan, First District, June 25, 1937.

*Bernard W. Coblentz* [*Charles S. Scholnicoff* of counsel], for the plaintiff.

*George D. Yeomans* [*Louis Cohen* of counsel], for the defendant.

LEWIS (DAVID C.), J. As a trolley car nears Hart street, an elderly lady leaves her seat, approaches within four feet of the motorman, and informs him she wants to get off at the next corner (Hart street). She stands there holding onto an iron upright with her right hand and waiting for the car to reach her corner and stop. The car passes Hart street. She again tells the motorman " I want to get off at Hart street," and then, after he has passed Hart street, he stops the car " suddenly " with a " terrific jerk." The force and the abruptness of the stop is registered in the consequences: it causes the right hand of the elderly lady to lose its grip upon the iron upright; it casues her to strike her back against the seat running lengthwise the side of the car and it lands her on the floor.

Upon the trial the jury had the opportunity to observe this elderly lady on the witness stand; they heard her tell of her experience, and they also listened to the physician describe the injuries she sustained.

After retiring and deliberating, the jury found that the defendant was negligent in its operation of the car and held the defendant liable for the damages sustained by the plaintiff.

The defendant has applied to the court to set aside the verdict of the jury. There has been much difference of opinion between the courts on the right of a passenger to recover in these jerk cases. (*Lombardi* v. *New York State Railways*, 224 App. Div. 438; *Lomas* v. *New York City R. Co.*, 111 id. 332; affd., 188 N. Y. 628; *Dochtermann* v. *Brooklyn Heights R. R. Co.*, 32 App. Div. 13; affd., 164 N. Y. 586; *Tompkins* v. *Interboro R. T. Co.*, 88 Misc. 20, 22.) Compare above cases with *Fish* v. *Brooklyn & Queens Transit Corp.* (246 App. Div. 843); *Quinn* v. *Colonial Motor Coach Co.* (242 id. 412; revd., 266 N. Y. 584); *Cohen* v. *Surface Transp. Corp.* (160 Misc. 247); *Nelson* v. *Lehigh Valley R. R. Co.* (25 App. Div. 535; 37 id. 631; affd., 165 N. Y. 635).

Apparently, if one simply says there was a " violent jerk," that alone is insufficient (*Cohen* v. *Surface Transp. Corp., supra*;

*Nelson* v. *Lehigh Valley R. R. Co., supra*); but if one shows it was an " unusual " and " extraordinary " jerk, incident to bringing a car to a stop when it is traveling fast, that may be sufficient. (*Lombardi* v. *New York State Railways, supra*.)

" When, therefore, a car proceeding at a fast rate of speed is stopped so abruptly as to throw a passenger from his seat with sufficient violence to cause the injuries here complained of, lack of due care on the part of the operator may, in the absence of other explanation, be inferred. (*Tompkins* v. *Interborough Rapid Transit Co.*, 88 Misc. 20.) " (*Lombardi* v. *New York State Railways*, 224 App. Div. 438, at p. 439.)

Then again, a " big jerk " with certain results may meet the requirements. (*Lomas* v. *New York City R. Co.*, 111 App. Div. 332.) Whereas to say the car " stopped suddenly," causing the passenger to be thrown to his knees, will not meet the bill. (*Fish* v. *Brooklyn & Queens Trans. Co., supra*.)

One might imagine that the right of a passenger to recover depends primarily upon the precision with which he describes the event or that it is to be governed by the legalistic distinction between what is " descriptive " and what is merely a " characterization." (See *Lombardi* v. *New York State Railways, supra*.)

It seems to me that such holdings are born of practical necessity. They are conceived in the fact that the operation of power-propelled vehicles necessarily involves certain inevitable incidental jerks. Of course, nothing runs perfectly smoothly in this life; and hence it is held that to make a jerk actionable it must be described as an " unusual " rather than as a " violent " or as a " sudden " jerk.

In the case at bar, however, we are dealing with a common carrier. Common carriers assume a definite responsibility. They undertake to man their cars with skilled and trained motormen. I take it that the measure of their competency is their ability to properly operate and control the car. Hence, the standard we set must meet the duty to be rendered. A sudden terrific jerk (*unexplained*), producing the serious consequences depicted in this case, cannot be considered a fulfillment of that obligation.

For the reasons stated, I am loath to outlaw this verdict. The issues before the court called for a knowledge of life rather than a knowledge of law. They dealt with experiences in the operation of a trolley car and not with theories of legal liability. They involve facts a motorman or layman would know more about than a lawyer or a judge. On what basis, then, must it be ruled that the court is a superior gauge to the jury of such human conduct; especially when the issue is one of reasonable care in the operation of a trolley car and the standard for the test is the average?

For the reasons stated, I believe that to outlaw this verdict would tend to elevate language above law; and make the use of the wrong word by an untutored and uncoached witness fatal to the right of recovery. This would come close to writing distinctions without differences into the administration of justice. Motion denied.