Arthur Wachtel, J.
The plaintiff, while traveling in defendant’s bus, on August 4, 1957, got up to change his seat and while the bus was in motion, proceeded into the aisle. He testified that the bus was going about 50 miles an hour; he took several steps holding onto the bars on the backs of the seats and the"bus came to a sudden ‘ ‘ very unusual ’ ’ stop. He further testified that his grip was “ torn off ” and he was thrown forward; his fall was broken when he hit his left hip and he crashed to the floor and fell “flat on my face”. He was “ knocked out ”, “ badly stunned ”.
A fellow passenger, Mrs. Stone, who was seated at the time of the accident, testified that the bus came to a “ sudden, violent stop ’ ’; there was evidence that she was shaken by a forward motion, and that she was “ shocked ” also.
Plaintiff saw a doctor the next day and was referred to an orthopedist who examined him on August 31, 1957, and again in January, 1961. The orthopedist diagnosed his injuries as a whiplash injury, cerebral concussion and post-concussion syndrome. He was later treated at Mt. Sinai Hospital from May, 1958 to November, 1958 and intermittently thereafter in February and June, 1959, and in June, July and October, 1960, for recurring neck pain and limitation of motion.
A cervical flexion-type collar was prescribed and was worn by the plaintiff from time to time to relieve the pain. In February, 1959, traction of the cervical spine was applied but the pain persisted thereafter, and in July, 1960, the need for cervical traction was again noted. The plaintiff complained that the *778 pain still “ comes and goes ” and that as a result of the injury-received from the accident he was required to retire from active work.
The plaintiff had pre-existing severe, osteo-arthritic changes in the cervical spine and had degenerative disc disease. He claimed that the whiplash injury caused by the accident aggravated this osteo-arthritic condition and his orthopedist supported this contention.
The jury gave a verdict for the plaintiff in the sum of $4,000. Defendant now moves to set aside the verdict on the ground that:
(1) Plaintiff has failed to establish any negligence on the part of the driver;
(2) Plaintiff has failed to present a prima facie case;
(3) The credible evidence establishes that there really was no accident; and
(4) The verdict was excessive and the result of sympathy for the plaintiff and prejudice against the defendant.
The defendant’s defense was that the accident did not happen at all. The driver testified that there was no unusual or violent stop; that no one reported to him any injury because of a sudden stop; that there were no unusual occurrences during the trip; that he did not see anyone fall or involved in any accident.
Accordingly, the first question to be resolved in this ease was whether or not plaintiff sustained his burden of proof that the accident happened at all. Implicit in the jury verdict was that the accident did happen as the plaintiff contended, and that he was thrown to the floor of the bus by a sudden stop with a force sufficient to tear his grip from the backs of the seats and propel him flat on his face on the floor and sustain the injuries of which he complains.
The next question is whether or not the proof was sufficient to support a prima facie case. The rule is well settled that sudden stops, lurches and jerks of a bus in the course of its operation are not in and of themselves sufficient proof of negligence. What evidence in addition is necessary to support a prima facie case depends upon “ other tangible proof that the bus was propelled forward with unusual or unnecessary force ’ ’ and ‘ ‘ other evidence of acts or of physical facts to warrant such a finding ”. (Taylor v. Westchester St. Transp. Co., 276 App. Div. 874 [2d Dept.].) “ If out of the ordinary and unusual, the sudden jerk was evidence warranting the imputation of negligence in the operation of the train (Gardner v. Central Park, North East River R. R. Co., 218 N. Y. 753; Futoransky *779 v. Nassau Electric R. R. Co., 227 N. Y. 638) ”. (Trudell v. New York R. T. Corp., 281 N. Y. 82, 85.)
A reading of the pertinent cases discloses that the physical facts that will support a prima facie case must be more than mere jostling, shifting, swaying or bending of the body. It must at least be such a violent force as will sweep a passenger bodily off his feet. As Mr. Justice Seabtjby said in Tompkins v. Interborough R. T. Co. (88 Misc. 20, 21): “ The fact that the car was stopped so suddenly and violently as to throw the plaintiff off her feet justifies the inference that due care in the operation of the car was not used. The evidence of the jerk which the car gave indicated negligence in its operation, and, in the absence of other evidence, was sufficient to carry the case to the jury. The fact that the car gave a lurch or a jerk sufficiently appeared from the testimony, and the use of these terms was not merely characterization. In view of the proof adduced and the circumstances proved, there was sufficient evidence to call upon the defendant to explain.” So, also, where the jerk was so violent as to cause the plaintiff to lose her grip on an iron support in a trolley car and throw her against the side of the car and onto the floor (Bergman v. Brooklyn & Queens Tr. Corp., 163 Misc. 762); also, where the plaintiff was thrown by a sudden movement of the car so violent as to break his hold and throw him out of the platform. (Futoransky v. Nassau Elec. R. R. Co., 227 N. Y. 638, supra; see, also, Gardner v. Central Park, North & East Riv. R. R. Co., 218 N. Y. 753, supra; Trudell v. New York R. T. Corp., 281 N. Y. 82, supra.) The same ruling has been made in a case where the force of the sudden stop was violent enough to throw a seated passenger from his seat and cause the plaintiff severe traumatic injuries, two broken ribs and severe concussion (Lombardi v. New York State Rys., 224 App. Div. 438); and of such violence as to lift the plaintiff bodily from his seat and bring him down with such force as to cause the injuries complained of (Schulz v. Finn, 273 App. Div. 780).
Cases cited by the defendant, Scarlett v. Lehman (122 N. Y. S. 2d 856); Kokofsky v. City of New York (297 N. Y. 553); Mintz v. International Ry. Co. (227 N. Y. 197); Lichtenstein v. City of New York (270 App. Div. 925) do not apply. They are all cases where there was proof of an emergency which required the driver to make the sudden stop. The proof destroyed the inference of negligence and plaintiff failed to sustain his burden of proof. (See for discussion of these cases, Desmond v. Doyle, 5 Misc 2d 490.)
*780 The question arises whether the rule of res ipsa loquitur may he applied to the case at bar. This rule is merely ‘1 a commonsense appraisal of the probative value of circumstantial evidence. It requires evidence which shows at least probability that a particular accident could not have occurred without legal wrong by the defendant. To negative every possibility that the accident occurred in some extraordinary manner which would exculpate the defendant is often impossible * * *
We may be constrained to act upon incomplete evidence where complete evidence is impossible. Then the logical probative force of the evidence produced is measured, in part, by the test of whether it is the best evidence available.” (Galbraith v. Busch, 267 N. Y. 230, 234; see, also, George Foltis, Inc., v. City of New York, 287 N. Y. 108, 115.)
Defendant’s counsel argues that there must be proof of the specific 1 ‘ circumstances ’ ’ of the stopping of the bus, that if there are possible causes of the accident which would rule out liability then the plaintiff may not recover. He suggests that if the bus made a sudden stop because of a cave-in in the roadway or the on-coming of a car from the other direction or a human being dashing into its path, that there would be nothing “ unusual ” in the stopping of the bus and there would be no prima facie case. He relies on the rule of Galbraith v. Busch (supra) in support of his argument. That rule is not applicable to the case at bar.
The Galbraith case held that a guest may not invoke the rule of res ipsa loquitur where there is proof of merely the sudden swerving of the automobile from its own lane. The key to the decision lies in the following words of the court: “ [T]he duty upon the defendant of going forward and producing evidence to rebut an inference or presumption of negligence cannot arise unless the evidence of the plaintiff justifies such inference or presumption * * * The problem in each case is whether
the circumstances unexplained do justify an inference of negligence. Ordinarily, circumstantial evidence is insufficient where the circumstances are consistent with freedom from wrong ’ ’ (pp. 233-234). The court’s ruling was based upon its conclusion that in the absence of proof of extraordinary conditions in the roadway a sudden swerve could be caused only by (a) the negligent operation of the car or, (b) by some defect in the automobile. The court was careful to point out that “If the defendants owed a duty to plaintiff to exercise reasonable care both in the operation and maintenance or repair of the automobile then the burden of explaining the cause of the accident and the showing that it occurred without neglect of duty may, *781 perhaps, logically and properly be shifted to the defendants ” (p. 235; italics supplied). The court held that the rule of res ipsa loquitur could not be applied to a guest in the circumstances presented in that case, because a guest assumes the risk of an unknown defect in the automobile and no duty was owed to him in that respect. But this does not apply to carrier-passenger cases; common carriers owe a duty to passengers as to both operation and mechanical defects. As to operation their duty is to exercise reasonable care. As to mechanical defects, their duty is to exercise ‘ ‘ the utmost care so far as human skill and foresight can go.” (Hegeman v. Western R. R. Corp., 13 N. Y. 9; Stierle v. Union Ry. Co., 156 N. Y. 70, 73; Beltz v. Buffalo Rochester & Pittsburgh Ry. Co., 222 N. Y. 433, 436.)
11 Bes ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Bes ipsa loquitur, where it applies, does not convert the defendant’s general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff. ’ ’ (Sweeney v. Erving, 228 U. S. 233, 240.) (Quoted by Lehman, Ch. J., in George Foltis, Inc., v. City of New York, 287 N. Y. 108, 119, supra.)
This was the basis upon which the case was submitted to the jury. It is for the jury to assess the weight of the inference of negligence in the light of all the credible evidence. This the jury has done. The court should not disturb its determination. There is no proof of bias or prejudice that may have influenced the verdict; nor can the court, upon the basis of all the evidence in respect to the nature of the injuries, the duration thereof and the treatment required, find that the verdict was excessive.
Accordingly, motion to set aside the verdict is in all respects denied.