qualified, may be surrendered, and that it has a surrender money value. These incidents of property, being attached by law to such certificates, constitute them property in a legal as well as a popular sense; and, as they are salable and assignable, they are properly the subject of a mortgage. The mortgagee would acquire an absolute right, as between the parties to the instrument, to the certificate, on default in the payment of the debt secured; for the chattel mortgage mentioned in this indictment was payable on demand, and on failure to comply with the demand the instrument would operate as a bill of sale.

The conviction was right, and the judgment must be affirmed. All concur.

---

## GROTSCH v. STEINWAY RY. CO. OF LONG ISLAND CITY.

(Supreme Court, Appellate Division, First Department. June 11, 1897.)

1. CARRIERS—INJURY TO PASSENGERS—SUDDEN STARTING OF CAR.
   It is a question for the jury whether defendant's electric car was negligently started where it gave such a jerk that plaintiff and others who were standing up were thrown on the floor, and a motorman testifies that the proper way to start a car is to apply the power gradually, in which case no one who is standing up will be thrown down.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   It is not contributory negligence to stand inside an electric car when the seats are all occupied.

3. EXPERT EVIDENCE—PHYSICIANS.
   In an action for personal injuries, a physician who had examined plaintiff before the trial testified for defendant that he found two small scars on the injured part. He was then asked if in his opinion the wounds were of a nature that could be sustained by a fall, such as plaintiff had suffered, on the floor of a street car covered with a wooden grating from which no points, bolts, or nails projected. Held, that the question was properly excluded where it had been shown that the scars were produced by surgical treatment.

Appeal from trial term, New York county.

Action by Elsie Grotsch against the Steinway Railway Company of Long Island City for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Eugene L. Bushe, for appellant.
James P. Niemann, for respondent.

PATTERSON, J.   The plaintiff in this action sustained injuries while a passenger on one of the defendant's cars on the 25th day of August, 1895. At about 8 o'clock in the evening of that day, she, in company with other persons, boarded the car at Vernon avenue, near Bodine street, in Long Island City. When she entered the car all the seats were occupied, and she was compelled to stand in the aisle, and take hold of one of the straps suspended from a rod, in the manner

usual in public conveyances on street railways. The car was moved by electricity on the trolley system. Some of the persons who entered the car with the plaintiff were also obliged to stand, taking various positions in the aisle of the car and on the platform. When the car started, the plaintiff, with other passengers, was thrown down upon the floor. She was lifted up, a seat was surrendered to her, and she continued her journey to the Long Island City ferry; but she did not make any complaint to the conductor of the car, nor was any notification of her injury given to the defendant until after this action was brought. It was sufficiently shown by the evidence that the car upon which the plaintiff was a passenger belonged to the defendant. The plaintiff swears that it was car No. 14, and that the conductor's badge displayed the number 98. She states that the accident happened about 8 o'clock in the evening. There is evidence to show that at about that time the defendant's car No. 14 was at or near the point at which the plaintiff entered the car. There were six cars in operation on the defendant's road that night, and from the time bills of the cars in operation on that evening it is substantially proven that the plaintiff was accurate in her statement as to the number of the car.

The negligence attributed to the defendant's servants in the management of the car is of a twofold character: First, the defective condition of the strap; and, secondly, the improper starting of the car. The strap was shown in evidence, and it appeared to have been worn at that part where the loop came in contact with the rod from which it was suspended. Two of the witnesses called by the defendant, to whom the strap was shown on the trial, recognized that it was worn, and that it was not in good condition, although they thought it was sufficient to stand a weight of 200 pounds. Whether it was sufficient to stand a strain such as it would be subjected to upon a sudden jerking, and when held by a person weighing 190 pounds (which was the weight of this plaintiff), does not fully appear. Nor is it conclusively shown that the condition of the strap, even if it were insecure, was such as could have been discovered by inspection; but that was properly submitted to the jury. It was shown that the car was inspected on the morning of the 25th of August, and the straps as well as the other appliances were examined. How thorough that inspection was is not disclosed. The evidence is not in a very satisfactory condition, but there was enough to authorize the conclusion that the company was negligent with reference to the strap; but, as to the starting of the car, the proof of negligence was beyond doubt such as to require the submission of the question to the jury. The testimony is abundant upon that subject. Several witnesses testify that the car was started with great violence, and the inference is fair that that violence could not have been the result of anything else than the improper application of the power to move the car. It was so great that several of the passengers inside the car were thrown on the floor, and the witness Rohrecker testifies that, as he reached the door of the car, the jerk was given; that the passengers fell back against him; and that he put out his hands to hold them back, and by that means saved a child from having its head

crushed. Other witnesses testify to the excessive force with which the car was started. That this must have been the result of negligence is the reasonable inference, and in this respect the case is entirely distinguishable from Black v. Railroad Co., 2 App. Div. 387, 37 N. Y. Supp. 830. In the present case, there is testimony of a motorman as to the proper method of starting a car operated on a trolley system. He swears that the ordinary and proper way is, when the power is first applied, to put on one point, and the car will move slowly; "the car moves gradually," and "there would not be enough force to throw anybody down who was standing up." After the lapse of 10 seconds, it is proper to put on another point of power. Putting on more than one point at a time "would be apt to throw people down, and injure them." It is just that situation which the plaintiff claims to have existed on this occasion, and to have caused this injury. The effect produced is precisely that which would have followed the putting on of more than one point; and it was properly left to the jury to say what was the cause of the violent starting of the car, in view of this testimony, and of the evidence that a certain thing happened which would be the necessary result of the application of more power to move the car than was safe and prudent in starting it.

There is nothing in the case to show contributory negligence on the part of the plaintiff. There was no seat she could occupy when she entered the car, and she stood in the aisle, using the ordinary support furnished by the company for persons so situated.

The exceptions to the rulings of the court on the trial are not well taken. The case was very carefully conducted by the justice presiding, who in a clear charge instructed the jury upon the questions of law substantially as requested by the defendant's counsel. In the main charge a statement was made, to which exception was taken, that the defendant corporation was responsible for the acts of its servants under ordinary circumstances; and it is now contended that that proposition was erroneous and misleading. But, if there were any inaccuracy in the expression of the court, the attention of the jury was subsequently and specifically called to what the judge meant, as follows:

"I do not mean to say that a corporation is responsible at all times for every and all acts of its servants. That is not true as a general proposition. If there is any liability in this case, it is because—First, the servant of the defendant started the car too violently, too suddenly, with too much force, and therefore did not exercise the proper skill and prudence required of him under the circumstances; and, in the second place, that the inspectors employed by the defendant did not do their duty, and discover an ascertainable defect."

This was so clear, pertinent, direct, and positive that its meaning could not be mistaken. The learned judge properly instructed the jury concerning the consequences of the injury as affecting the question of the measure of damages. He told them that, if the physical ailments resulting from the injury had been aggravated by any neglect in the treatment of them in the early stages of the injury, they must eliminate all such conditions from consideration; that is to say, such additional aggravation, pain, and suffering as the failure

to treat the wounds properly in the beginning may have brought about. There was some question in the case as to the want of proper care and attention to the wounds between the 25th and the 28th of August, on which latter date the doctor was called in; and the instruction given to the jury on that topic was as favorable to the defendant as it could reasonably have expected.

The only exception taken to rulings of the court on evidence that requires consideration is that which applies to a question asked Dr. Burnett, a witness called on behalf of the defendant. He testified that in November, about three months after the accident happened to the plaintiff, he examined her, pursuant to an order of the court, and he states that all he discovered as indicating injuries were two small scars on the back of the thigh,—one about the middle of the thigh, and the other about the top of it; that they were then in a healed condition, and nothing but the two scars remained; that there was no evidence about her limb of any other injury than the two scars mentioned. He was then asked the question if, in his opinion, the wounds were of a nature that could be sustained by a person falling on the floor of a street car, which floor was covered with a wooden grating, and from which no points, bolts, or nails projected. This question was excluded as incompetent and improper, to which the defendant excepted. The witness was asked by this question to give his opinion, and his opinion merely. It is not to be doubted that witnesses skilled in any science or art, or who possess experience or special knowledge upon a particular subject of inquiry not possessed by jurors, may testify, not only to facts, but may give their opinion as to such facts (Van Wycklen v. City of Brooklyn, 118 N. Y. 429, 24 N. E. 179), and may even do so in many cases where the opinion asked for directly affects the whole issue involved in the case. See authorities referred to in the case last cited. But where opinion testimony, so called, is to be presented to a jury in such a case as this, that opinion should be based upon all the elements essential to its formation, if the opinion asked for goes to the whole issue, as is the situation here. This witness was testifying from two sources of knowledge: First, his observation, made upon an examination of the injured limb of the plaintiff; secondly, from the history of the case, as he learned it from the physician who attended the plaintiff and treated her for the injuries she sustained by the accident. The question was evidently directed to eliciting an opinion that scars which would result from an incised wound or puncture of the flesh could not have been caused by injuries sustained by the plaintiff falling upon a flat surface, or upon such a grating as that on the floor of the car, from which nothing protruded. It may be said that the jury could judge of that fact as well as a skilled physician, but from this question is carefully excluded that which is a most important feature of the testimony of Dr. Burnett himself. The presence of the scars upon the thigh of the plaintiff is fully accounted for, irrespective of the circumstances of her falling upon the floor of the car. That such a fall would produce simply a contusion of the flesh seems to be obvious; but Dr. Burnett knew, and his own evidence discloses that

he knew, that those scars were the result of surgical treatment, for he says, with reference to these evidences of incised wounds:

"In the condition that the doctor explained to me, there was a good deal of, you might say, dead necrotic tissue, that he cut away."

That statement in Dr. Burnett's testimony immediately precedes the question as to his opinion, now under consideration. With that fact appearing as part of the history of the case, his opinion was formed concerning blood poisoning being the result of the want of proper attention to the wounds. It was not proper to ask his opinion concerning the nature of the wounds as indicated by the scars, simply in connection with the fall upon the grating. He was speaking only of the scars, and he had accounted for their presence. An answer to the question would have misled the jury, and, under the special circumstances of this case, and the course of the previous examination of this witness, the court was right in not allowing that question to be answered.

The amount of the verdict was not excessive under all the circumstances, and the judgment and order appealed from should be affirmed, with costs. All concur.