DOCHTERMANN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.  June 21, 1898.)

CARRIERS—INJURY TO PASSENGER.
 Where the construction and method of propulsion of a surface car are such as to involve a serious jerk in starting, a jury would be warranted in inferring want of ordinary care in its operation, from the fact that a woman passenger was thrown to the floor and injured, through the starting of the car before she was able to reach a seat.

Goodrich, P. J., and Woodward, J., dissenting.

Appeal from trial term, Kings county.

Action by Mary Dochtermann against the Brooklyn Heights Railroad Company.  From an order setting aside the verdict of a jury in favor of plaintiff and awarding a new trial, she appeals.  Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Samuel S. Whitehouse, for appellant.
 Thomas L. Hughes, for respondent.

CULLEN, J.   This action is brought to recover damages for personal injuries received by the plaintiff while a passenger upon the defendant's trolley car.   The plaintiff's story is that she signaled the car, which stopped; that the motorman beckoned to her to enter it by the front platform, opening the gate for the purpose of giving her entrance; that she got upon the platform; and that just as she was stepping in, or had stepped into, the body of the car, and before she was able to sit down, the car started with a violent jerk, by which she was thrown down and received injuries, for which she brings this suit. The plaintiff testified that the car started with great force.   A lady, a passenger in the car at the time, and seated, characterized the start as "such a jerk it almost threw us off our feet, too."   Another witness described it as "a jerk that sent us sideways." It was not disputed that the plaintiff was either thrown down or fell down as stated. Expert testimony was given on the part of the plaintiff to show the proper manner of starting a trolley car, and that it could be started without a violent jerk.   On the part of the defendant it was testified by the motorman and conductor that the car was started properly, without any unusual or sudden jerk.   Expert evidence was also given that it was impossible to start the car without a marked jar.   The cause was submitted to the jury under an entirely fair charge, to which no exception of merit was taken by the defendant, nor are there any exceptions as to the rulings on evidence which require discussion.   The jury rendered a verdict for the plaintiff.   Thereafter the defendant's motion for a new trial was granted, and the verdict set aside, and from the order granting a new trial this appeal is taken.

There is but one question presented on this appeal,—whether the evidence of the defendant's negligence was sufficient to justify the submission of the cause to the jury, or whether its motion made at the trial to dismiss the complaint should have been granted.   The

burden of the argument of respondent's counsel is that a jar or jerk necessarily takes place when a car at rest is started in motion, and that, therefore, the occurrence of the jerk or jar is not evidence of negligence. This is true to a certain extent, but only to a certain extent. The question, like most questions, is one of degree. Some jar must be experienced when a car assumes motion, but not necessarily a jar sufficient to cast down a standing person, or throw a seated passenger almost off his seat. In Miles v. King, 18 App. Div. 41, 45 N. Y. Supp. 379, this court held, per Hatch, J., even of a steam railroad, that "the jury would be authorized to find that it was negligence to suddenly, and without warning, jerk the train so violently as to throw the passengers into the seats." A fortiori would this rule be applicable to the case of a street car. But, if we assume that a trolley car can be started only with a violence of motion that is not experienced in the starting of other cars or trains, it would not relieve the defendant from liability. The measure of the defendant's duty is the highest degree of human care and foresight. If there be this great danger in the operation of trolley cars, then the jury might well find that it was negligence to start a trolley car unless the passenger has obtained a seat, especially in the case of a woman. If the claim of the defendant in respect to the necessity of jars and jerks be true, it does not relieve it from liability, but simply shifts the exercise of its care from one direction to another. It cannot be tolerated that a carrier, subject to the measure of diligence stated, may successfully assert that, in the ordinary and proper management of its road, a passenger must necessarily and ordinarily risk the safety of his body and bones. While the defendant is not a guarantor of the safety of its passengers, still it must find some way of so conducting its business that its passengers shall be reasonably safe and secure. If a danger is created by the method of operating the road or the power employed, then the defendant must take means to obviate that danger.

Most of the cases cited by the respondent's counsel are plainly distinguished from the one before us. Hayes v. Railroad Co., 97 N. Y. 259; Paulson v. Railroad Co., 13 Misc. Rep. 387, 34 N. Y. Supp. 244, and Bradley v. Railroad Co., 90 Hun, 419, 35 N. Y. Supp. 918, were all cases where the parties voluntarily, and without necessity, were standing on the platform. Now, while it is not negligence per se to stand on the platform of a street car, it is but fair and reasonable that the person so riding should assume the risk ordinarily incident to such a position from the jolts and jars of the moving car, the unevenness of the track, and the turning of curves, and not increase the responsibility or liability of the carrier for his safety. But this rule has no application to a passenger who from prudence, or possibly from timidity, desires, above all things, the security of his person, and wishes to travel in a manner in which that security can and ought to be obtained. I think the case of Black v. Railroad Co., 2 App. Div. 387, 37 N. Y. Supp. 830, cannot be fairly construed as holding that a passenger has not the right to attain a place of safety before the car should be started. Otherwise the case would be inconsistent with the subsequent one of Grötsch v. Railway Co., 19 App. Div. 130, 45 N. Y. Supp 1075, the opinions in both cases being written by the same

learned judge. However, if the doctrine of the Black Case is as claimed by the counsel for the respondent, we are not disposed to adopt it. The true rule is stated in Akersloot v. Railroad Co., 131 N. Y. 599, 30 N. E. 195, where it was held: "It was his [conductor's] duty to see that a passenger, lawfully entering the car, was in a place of safety before giving the signal to the driver to proceed."

Since the foregoing was written the court of appeals has decided the case of Stierle v. Railway Co., 50 N. E. 419, in which that court has corrected a prevailing misconception as to the measure of the duty of carriers of passengers in the operation of railroads,—a misconception in which, I am frank to say, I shared. The case was one of injury to a passenger on a horse car, occasioned by alleged negligent driving on a switch. It was held that the defendant was only liable for the failure of the driver to use that skill and care which would be required of an ordinarily careful and prudent man. Whether this rule was intended by the court to apply to the operation of all railroads, either by horse power or by steam, and, if distinction is to be drawn between horse cars and steam railroads, into which class the trolley car properly falls, I do not know. But, assuming that the liability in the operation of electric cars is no greater than that of horse cars, I am still of opinion that, considering the frequency of the occurrence of such accidents, the jury might properly find that it was want of even ordinary care to start the car until a woman had obtained her seat, whatever may be the rule when the passenger is a man.

The order granting a new trial should be reversed, and judgment directed for the plaintiff on the verdict, with costs.

HATCH, J., concurs.    BARTLETT, J., concurs in result.

GOODRICH, P. J. I cannot concur in the opinion of Mr. Justice CULLEN, although now, as always, I have great hesitation in differing with his conclusions. His opinion proceeds upon the theory that there was evidence sufficient to submit to the jury the question whether the defendant's servants started the car before there was sufficient opportunity for the plaintiff to be seated. This requires a summary of the evidence on that subject. The plaintiff entered the car by the front door, and fell just as she stepped in the door. She says that she does not know whether the door was closed at the time the car started, but "don't think it was." As her back was to the front door, she was justified in giving her testimony on this subject cautiously. This is quite inconsistent with her previous statement, and still more so with the evidence of her other witnesses. Miss Cardwell, a witness called by her, testified that she thinks the door was open, and was "pretty sure" it was open. Miss Cardwell says it was still open at the time of the fall. Miss Cardwell also testified that the plaintiff had reached about the center of the car, and was turning around to sit down, when she fell. Miss Cardwell did not see the plaintiff before she fell, but was watching another lady, who entered the car by the rear door at the time when the plaintiff entered by the front, and says that the lady who entered at the rear

was already seated when she heard the plaintiff fall. The defend-- ant's motorman and conductor both testify that the door was closed,. and that the motorman, as is usual when a passenger enters the car by the front platform, "rang her up"; that is, rang the bell to signify to the conductor that some one had entered by the front platform.. The conductor also says that the plaintiff took a seat, and that after this he rang the bell to start. This evidence is referred to only as material to the question whether the plaintiff was in a position of safety, and whether the car was prematurely started. . I think that it affords ample evidence of the fact that the case is not one of those where a car is started before a passenger is within. The plaintiff was in a position inside the car, where, under ordinary circumstances, it could not reasonably be anticipated that she was in any danger by reason of the starting of the car, provided it was started in the usual manner. The burden of proof, therefore, was on the plaintiff to show that the defendant was guilty of some negligence, either in furnish- ing improper appliances for motor power, or negligently managing. those which were in use on the car. Of such facts there is no evi- dence whatever. On the contrary, it appears that the motor was. one of approved construction; that to start a car smoothly the motor- man must turn the handle at first one point, and afterwards, suc- cessively, two and three points, to accelerate the speed, and that this is the usual method, and the method pursued by him in the pres- ent instance. The plaintiff's and defendant's experts alike testified that this is the usual method. There is no evidence whatever to contradict the statement of the motorman, and we must assume that he started the car in the usual manner.

The fact that the plaintiff fell is not evidence that the fall resulted from any negligence of the conductor or motorman. A person who is standing in a car or on any vehicle while the latter is changing from a position of rest to one of motion has a tendency to lose his balance, though not necessarily to the extent of being thrown down.. A car cannot be started without a tendency towards that effect. This is of such common knowledge and observation that a passenger must be presumed to know and is bound to act with reference to. such fact.

In Black v. Railroad Co., 2 App. Div. 387, 37 N. Y. Supp. 830,. the appellate division of the First department reversed a judgment for the plaintiff, saying (pages 388, 389, 2 App. Div., and page 831,. 37 N. Y. Supp.):

"A perusal of the testimony, as it appears in the printed case, shows an· utter want of proof to establish the allegations of the complaint respecting· the cause of the accident. There is not one word of testimony to show any unskillfulness or negligence of the company's servant in charge of the appli- ance by which the movement of the car was controlled. All that is said is that the car started with a violent jerk. * * * It was sought inferentially to establish that, by reason of the plaintiff's falling when the car started, it necessarily must have been because of something unusual and excessive in· applying the motive power, and hence negligence. * * * In what attitude the plaintiff was standing, how his body was balanced, or whether he was not in such a position that any motion of the car on starting would have caused' him to lose his balance, does not appear. The whole of the plaintiff's case· seems to depend upon a mere characterization of the motion, by himself and,

his wife and another witness, as a violent jerk, which, as before said, is in no wise distinguished from the ordinary initial force of movement of a cable car when started. The case, therefore, is destitute of proof on the subject of negligence on the part of any of the defendant's servants in starting the car. * * *"

In Hayes v. Railroad Co., 97 N. Y. 259, the court of appeals held it error to refuse nonsuit where there was no evidence to prove facts warranting an inference of negligence, saying (page 262):

"The plaintiff, therefore, gave no evidence which even tended to show that there was any negligence on the part of the company. He must prove something which warrants that inference, and not leave his case upon facts just as consistent with care and prudence as with the opposite."

It has been frequently held that proof of a sudden jerk in the starting of a car is not evidence of negligence sufficient to justify a submission of the question of negligence to a jury. Paulson v. Railroad Co., 13 Misc. Rep. 387, 34 N. Y. Supp. 244; Bradley v. Railroad Co., 90 Hun, 419, 35 N. Y. Supp. 918; Jonas v. Railroad Co., 21 Misc. Rep. 306, 47 N. Y. Supp. 149.

Akersloot v. Railroad Co., 131 N. Y. 599, 600, 30 N. E. 195, 196, is cited by Mr. Justice CULLEN as authority for the proposition that "it was his [the conductor's] duty to see that a passenger, lawfully entering the car, was in a place of safety before giving the signal to the driver to proceed." In that case a woman and a child about five years of age were entering an open car, and before they had taken seats the car started. The prevailing opinion stated that "the starting of the car was under the control of the conductor. * * * If the car started as the plaintiff's child and its attendant reached the topmost step, which was on a level with, and a part of, the floor of the car, there would be danger that the sudden motion imparted to it, while they were in that position would throw one or both of them to the ground"; and the child was thrown to the ground, and had a leg so crushed by the wheel that it required amputation. The decision was made by a divided court, four judges concurring in the prevailing opinion, and three in the dissenting opinion, in which it was said:

"It is difficult to believe that the horses could start a heavy car, standing still, with a very severe jerk. It is true that she fell down in her seat, and that George fell out of the car; but we do not think that that circumstance furnishes evidence of itself of culpable want of care on the part of the driver of the car. When a car is stopped long enough to permit a person desirous of becoming a passenger to safely enter it, he is then in a safe place, and must take some care of himself, so that he will not be thrown down by any ordinary management of the car. Upon this evidence, as it now appears, we are unable to say that there was any negligence which can cast the pecuniary consequences of this most unfortunate accident upon the defendant."

Grötsch v. Railway Co., 19 App. Div. 130, 45 N. Y. Supp. 1075, was a case where a woman entered a car, and was hanging on a strap, there being no seat for her to occupy. While so standing the car was suddenly started, the strap broke, and she and several other persons were thrown to the floor with great violence. The court (Patterson, J., who also wrote the opinion in the Black Case) said:

"Several witnesses testify that the car was started with great violence, and the inference is fair that that violence could not have been the result of

anything else than the improper application of the power to move the car. It was so great that several of the passengers inside the car were thrown on the floor; and the witness Rohrecker testifies that as he reached the door of the car the jerk was given, the passengers fell back against him, and that he put out his hands to hold them back, and by that means saved a child from having its head crushed. Other witnesses testify to the excessive force with which the car was started. That this must have been the result of negligence is the reasonable inference, and in this respect the case is entirely distinguishable from Black v. Railroad Co."

I am of the opinion, therefore, that the court ought to have dismissed the complaint on the motion made at the close of the plaintiff's evidence, and renewed at the close of the whole evidence, on the ground that there was no evidence that the car was negligently started or was started in any unusual manner, and on other grounds stated by the defendant's counsel. In this view I am confirmed by the decision of the learned justice who presided at the trial. He directed the argument of the defendant's motion to set aside the verdict to be heard on October 29, 1897, and after a consideration of the matter, which was not concluded till January 6, 1898, set aside the verdict, as being contrary to the evidence and contrary to law. I think that great weight should attach to his opinion, in view of the fact that the justice who hears the witnesses in a trial must thereby form some opinion of the merits of a controversy. It is with great hesitation that in this case I am compelled to differ with the opinion of my learned associate, but I have no hesitation in saying that I think substantial justice will be done by affirming the order for a new trial.

Since the foregoing was written the court of appeals, Gray, J., writing, in Stierle v. Railway Co., has delivered an opinion, reported in 50 N. E. 419, in which the doctrine upon which I have based my opinion is clearly and forcibly stated. The trial judge had charged the jury that, "in respect to carrying passengers, a railroad company is bound to exercise all the care and skill which human prudence and foresight can suggest to secure the safety of their passengers," and to this the defendant excepted. The general term held (34 N. Y. Supp. 185) that this was reversible error, and the court of appeals affirmed such reversal, saying:

"The obligation of carriers of passengers to exercise the highest degree of care which human prudence and foresight can suggest, only exists with respect to those results which are naturally to be apprehended from unsafe roadbeds, defective machinery, imperfect cars, and other conditions endangering the success of the undertaking. Morris v. Railroad Co., 106 N. Y. 678, 13 N. E. 455; Palmer v. Pennsylvania Co., 111 N. Y. 488, 18 N. E. 859; Palmer v. Canal Co., 120 N. Y. 170, 24 N. E. 302. In every case, the degree of care to be exercised is dependent upon the circumstances, and, if the accident is attributable to the existence of defects in the road, or in the mechanical appliances availed of for the operation of the railroad, by reason of which there was a possibility of loss of life or limb to the traveling public, the strict rule requiring the highest degree of care and of human skill would be applicable. The common carrier is not an insurer of the safety of its passengers, but it is, and properly should be, bound to use its utmost skill and vigilance to guard against the possibility of accidents from the condition of its road and of the machinery used in the transportation of passengers. In this case the plaintiff, if he was to be believed, was injured because of the alleged negligent manner in which the driver of the car attempted to move or

switch his car from one track to the other, in order to cross the Harlem river bridge, then being repaired, and permitting the use of only one track. Under those circumstances, the defendant was only liable for the failure of the driver to use that skill and care which would be required of an ordinarily careful and prudent man."

WOODWARD, J. Without entering upon a discussion of the law, as applied to this case, I am constrained to support the position of the Presiding Justice. If my vote were final upon the question, and there was no opportunity for the plaintiff to have a new trial, I might feel that it was my duty to discuss more at length the questions involved before concurring in setting aside the verdict of a jury. But in view of the fact that it permanently deprives the plaintiff of no substantial right, and the great consideration which I entertain for the judgment of the trial justice, and in view of his peculiar opportunities for observing the witnesses and forming a correct estimate of their credibility, I am satisfied that the ends of justice will not be defeated, but rather promoted, by the granting of a new trial. I therefore concur with the opinion of Presiding Justice GOODRICH, at least in so far as the result is concerned.