None of the authorities mentioned in the prevailing opinion supports the doctrine that the common carrier of passengers for hire is exempted from liability merely because the mischief was accomplished by a greyhoundlike movement of the car. The plaintiff's testimony that "all at once the car gave a jump" is a distinct assertion that the movement which threw him off was a sudden one, and in that particular different in character from the preceding movement, under which he had managed to maintain his footing. He gave undisputed evidence tending to establish that he was accepted as a passenger in a place where his safety depended upon his being carried at a rate of speed which would enable him to hang onto the means of safety furnished him, and that he was nevertheless carried along without any relaxation of the usual fast rate, until by a jump of the car, which came all at once, he was torn from his holding, and thrown to the ground by reason of a sudden jump of the car thus occasioned, and both in reason and by authority was clearly entitled to submit his claim for compensation to the judgment of a jury.

I therefore vote for reversal.

WOODWARD, J., concurs.

(89 App. Div. 311.)

### GATENS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department.   December 30, 1903.)

1. CARRIERS — STREET RAILROADS - INJURIES TO PASSENGERS — DANGEROUS POSITION—PLATFORM.

> Plaintiff took passage on a street car which was so crowded that he was compelled to stand on the rear platform and hold on by the hand rail. The conductor accepted his fare while in this position, and without notice to plaintiff the car was driven around a curve in the track without slackening speed, in violation of a rule of the company requiring the speed to be reduced one-half in rounding curves, and plaintiff was violently thrown from the car and injured. *Held*, that such facts were sufficient to establish negligence on the part of the carrier entitling plaintiff to recover for his injuries.

Woodward, J., dissenting.

Appeal from Trial Term, Kings County.

Action by William E. Gatens against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Bayard H. Ames (Arthur Ofner, on the brief), for appellant.
S. S. Whitehouse, for respondent

HIRSCHBERG, J. The judgment recovered by the plaintiff is for damages because of personal injuries sustained by him on being thrown from the rear platform of one of the defendant's cars while rounding a curve on Fourth avenue, at or near Fifteenth street, in

¶ 1. See Carriers, vol. 9, Cent. Dig. § 1202.

the borough of Manhattan. He testified that the car was crowded inside, all the seats and standing room being occupied, and that the conductor made no objection to his standing upon the platform, but, on the contrary, collected his fare there. He did not know of the existence of the curve, but was standing at the time with his back to the body of the car, holding on by the hand rail. The car was going very fast as it approached the curve, and without any slackening of speed struck the curve very forcibly, breaking his hold upon the hand rail, and throwing him so violently into the street that he remained unconscious for a considerable period of time after he was taken to a hospital. The plaintiff's version of the occurrence was corroborated by a companion, who testified that the car was going very fast as it approached the curve, and that it did not slacken its speed at all. This companion further testified to the fact that he had his arm around a stanchion, and managed to hold on as the car rounded the curve, although he was thrown towards the door of the car by the impetus. As against this evidence, the motorman testified that he had reduced the speed of the car at the curve to one-half, in accordance with a rule of the company, and another witness for the defendant testified that the car was going at that point at a regular rate of speed, adding, "I think it slowed up going around the curve, because they all do." The conductor testified that the car was behind time; that he was standing in the car, collecting fares, at the time of the accident; and that up to that time the car was going at the usual rate. That the car went around the curve at a sufficient rate of speed to throw the plaintiff off, and that it did in fact throw him off, notwithstanding his efforts to hold fast by the hand rail, is undisputed. No evidence was given tending to show that the plaintiff received any warning of the approach of the curve, the defense being predicated mainly upon the evidence of the conductor to the effect that there was room inside of the car at the time, and that there were even vacant seats. The case was submitted to the jury in a charge very favorable to the defendant, to which charge the defendant took no material exception, and the verdict must be deemed to establish in the plaintiff's favor such facts as were in dispute.

Assuming, as the jury has found, that there was no room for the plaintiff inside the car, the defendant, on accepting him as a platform passenger, certainly owed him the duty of transporting him in such a manner as to render his position on the platform reasonably safe; and it cannot be said that there was no evidence which would justify a jury in concluding that that duty was neglected. If the jury believed the evidence of the plaintiff and his companion that the car approached the curve at a high rate of speed, which was not reduced in going around it, then they would be entitled to find that the motorman negligently violated the rule of the company which required him to reduce the rate one-half at that point, and this finding alone would be sufficient to support the claim of negligence. The question of the liability of the defendant under circumstances similar to those herein presented has been recently considered by the writer, and the cases collated, in Sheeron v. Coney Island & B. R. R. Co., 85 N. Y. Supp. 958, and in the dissenting opinion in Moskowitz v. Brook-

lyn Heights R. R. Co., 85 N. Y. Supp. 960. The numerous authorities need not be repeated here. They seem to be quite uniform in holding that the passenger who has been accepted as such upon the platform of a crowded car may assume that it is a reasonably safe place to ride, and that the transportation company owes him the duty of guarding his person from danger, at least in so far as ordinary care will accomplish that result. Many of the authorities enjoin the exercise of great care in the preservation of the safety of such a passenger, and some require the exercise of extraordinary care, but in most of them stress is laid upon the obligation of giving some warning to the passenger thus dangerously situated before exposing him to the peril of an unknown curve in the road. Thus, in Wilder v. Metropolitan Street R. Co., 10 App. Div. 364, 41 N. Y. Supp. 931, this court said, through Mr. Justice Bradley (page 367, 10 App. Div., page 932, 41 N. Y. Supp.) :

"But, if warning to passengers in the car was reasonably necessary for their protection or safety, it was the duty of the defendant to give them the benefit of it."

In Lucas v. Metropolitan Street R. Co., 56 App. Div. 405, 67 N. Y. Supp. 833, the court said (page 407, 56 App. Div., page 834, 67 N. Y. Supp.) :

"The defendant, having permitted the plaintiff to go upon its car, and taken his fare, obligated himself to exercise extraordinary care to transport him to the point of his destination without injury. It could not expose him to unreasonable danger, even though he stood upon the platform of the car. Graham v. Manhattan R. Co., 149 N. Y. 336 [43 N. E. 917]. When it was about to run its car around the curve at the speed set out in the record, it owed the plaintiff a duty of informing him of that fact, or indicating to him in some way that he must exercise at that point increased care for his own safety. This the verdict of the jury establishes that the defendant did not do, and the failure to perform this duty, the plaintiff being free from negligence, renders it liable. Dillon v. Forty-Second St. R. Co., 28 App. Div. 404 [51 N. Y. Supp. 145]; Schaefer v. Union R. Co., 29 App. Div. 262 [51 N. Y. Supp. 431]; Lansing v. Coney Island & B. R. R. Co., 16 App. Div. 146 [41 N. Y. Supp. 120]."

In Schaefer v. Union Railway Co., 29 App. Div. 261, 51 N. Y. Supp. 431, the court said (page 263, 29 App. Div., page 432, 51 N. Y. Supp.) :

"That the car was permitted to go down the incline at a very high rate of speed; that it was crowded with passengers inside and out; that while going at that rate of speed it struck this curve; that the passengers had no warning of the approach of the curve; and that the car lurched so that several passengers besides the plaintiff were thrown down—was established by the evidence, and might have been found by the jury. Upon those facts the jury might well have predicated negligence on the part of the defendant."

In Graham v. Manhattan R. Co., 149 N. Y. 336, 43 N. E. 917, the Court of Appeals stated the rule applicable to this class of cases to be that, where a person is taken upon a train for transportation upon a platform as a passenger, the company was "bound to exercise a high degree of care to make the platform safe for his occupation, and he was entitled to assume that it would." The court added (page 342, 149 N. Y., page 919, 43 N. E.) :

"Even if the plaintiff assumed the ordinary risk which attended riding upon the platform, he had a right to assume that the defendant's servants

would cause no unreasonable disturbance of the crowd, and that the cars were so constructed as not to render his position dangerous from their prox· imity to each other in passing over any portion of the road, or at least, if such danger existed, that he would be apprised of it."

The rule which requires that a passenger who is permitted by a common carrier to occupy a dangerous place for hire to be notified that he is approaching a part of the road where an unusual effort on his part will be required to avert peril which is unknown to him is a salutary one, and many other cases than those referred to might be ·cited in its support. If no such obligation existed, a very large number of the patrons of the transportation companies in the city of New York would be exposed to constant danger, and the condition would be fulfilled which Mr. Justice Cullen reprobated in Dochtermann v. Brooklyn Heights R. R. Co., 32 App. Div. 13, 15, 52 N. Y. Supp. 1051, viz., "that a carrier * * * may successfully assert that in the usual and proper management of its road a passenger must neces- sarily and ordinarily risk the safety of his body and bones."

The appeal presents no other question than the sufficiency of the evi- dence, and it follows that the judgment should be affirmed.

Judgment and order affirmed, with costs.

GOODRICH, P. J., and HOOKER, J., concur; JENKS, J., in ·result.

WOODWARD, J. (dissenting). I cannot concur in the affirmance of this judgment. The plaintiff's theory is that the defendant was negligent in the operation of its street surface electric car in striking .a curve with such violence as to throw him from the rear platform. The plaintiff, with a friend, was standing upon the rear platform of the defendant's car as it approached Fifteenth street, on Fourth ave- nue, in the borough of Manhattan. He was standing with his back to the motorman, looking toward the rear of the car, and his friend stood facing him, with his arm thrown around the upright standard which supports the projecting roof·of the car. .They were both near the end of the platform, and the plaintiff testifies that his hands were behind him, grasping the hand rail or rods which protect the win- dows of closed cars; that he did not know that this curve was in the road, though he admitted that he was aware of the fact that curves were common to street surface railroads, and that the car was going fast when it struck this curve; and that he was thrown out into the street, sustaining the injuries for which he seeks recovery. His testi- mony is that "the car was going as fast as it had been going on the ·straight rail from Twenty-Third street. When it struck the curve, it did not slacken up at all. The car was going fast as it approached this curve." The plaintiff's witness Maguire, his friend, testifies that "the car was going very fast as it approached this curve at Fifteenth street. It did not slacken speed at all." This is the only evidence .as to the negligence of the defendant in the operation of the car. What does the plaintiff's witness mean by going "very fast"? The term is entirely relative. An express train is going very fast when it is running 50 or 60 miles an hour. Five or six miles an hour would be very fast for a canal boat, but comparatively slow for an electric

street car; and the defendant's motorman testified without contradiction that the car was running about four miles an hour on the straight rail as he approached Seventeenth street, and that the usual rate of speed on this line, on the straight rail, is about six miles per hour. This is the highest rate of speed which there is any evidence to support, and the testimony of defendant's motorman is uncontradicted that he turned off his power and applied the brake 10 feet before reaching the curve, so that the situation is presented of a car approaching a long curve at a speed of not over six miles an hour, with the current entirely turned off and the brake applied, so that, as the motorman testified, "I just let the car roll when I turned all my power off," indicating that the car struck the curve only with the momentum it had gained while running at not to exceed six miles per hour. More than this, the evidence indicates that the car was passing upgrade, for the motorman testified that, "I was going up till I got within ten feet of Fifteenth street, with all my power on," and if this was the case there would be no doubt that the speed of the car must have been materially lessened before it touched the curve. However this may have been, there is absolutely no evidence that the car was going faster than its regular speed at this point; no evidence that it was running more than six miles an hour as it approached the curve; and the defendant's evidence is undisputed that the current was turned off and the brakes applied, so that the car could not have struck this curve with the momentum of the car aided by the tractive force of the electric current even at the rate of six miles an hour. Defendant's witness William Willan, who was employed in the park at this point, and who testified that he had seen hundreds and thousands of cars pass this curve, says that:

"As the car went around, and as this accident happened, I did not notice anything unusual in the speed of the car. The car was at a regular rate of speed. I think it slowed up going round that curve, because they all do. I noticed that in that part for years. I have seen cars go around there frequently before—hundreds and thousands of times. There was nothing in the speed of this car and the way it went around that seemed unusual, other than that which I have seen there again and again."

This witness saw the accident at a distance of 15 or 20 feet, and his evidence corroborates that of the motorman as to the speed of the car—that it was the usual speed; nothing to indicate that it was anything different from that of every other car which passed over this curve. Where, then, is the basis for defendant's negligence? The mere fact that an accident happens is not proof of negligence, and where the car is shown without contradiction to have been operated in the usual and customary manner, where long experience has demonstrated the safety of such operation, it is difficult to understand how a jury may properly be permitted to speculate upon the probabilities of negligence. There was no evidence that any one else had ever been thrown off or injured at this point, and, as was said in the case of Ayers v. Rochester Railway Co., 156 N. Y. 104, 108, 50 N. E. 960:

"It would be a very harsh rule that would hold a company liable for a possible injury resulting while passing, at a proper speed, over a curve that has long been in use, and where no accidents are shown to have happened."

The complaint does not allege any specific act of negligence. After the formal allegations in reference to the corporation and the presence of its tracks, it is averred "that there was at said time a bend or curve in the tracks of said road on said Fourth avenue, at or near Fifteenth street." There is no suggestion that this was a dangerous curve, or that the defendant had any reason to expect that persons in the exercise of reasonable care, while occupying the platform, would be thrown off and injured, or that any one had ever been injured at this point, although it is a matter of common knowledge that a large portion of the travelers upon the street surface railroads do occupy the platforms. The next paragraph of the complaint alleges the presence of the plaintiff upon the car, the payment of his fare, and "that while on said car, and while the same was traveling along said Fourth avenue, and when it reached a bend or curve in the track at or near Fifteenth street, the plaintiff was violently thrown from said car to the street." The next paragraph alleges the injuries, and the fourth paragraph alleges that "the accident and injuries aforesaid were caused solely by and through the negligence of the defendant, its agents and servants." These are the only averments of the complaint in any way relating to the question of negligence, and the evidence does not suggest that there was any duty on the part of the defendant to give a warning, or that the curve was of such an abrupt or dangerous character as to impose this duty on the defendant. The case apparently proceeded upon the theory that the mere fact that the plaintiff was thrown off was sufficient to charge the defendant with negligence, while, in my view of the case, it was necessary that the plaintiff should allege and prove the specific facts on which negligence was to be predicated. This curve had been in existence, and the defendant had operated cars over it, for some time—for time enough so that one of the witnesses testifies (and he is uncontradicted) that he had seen hundreds and thousands of cars pass over this curve; and there is not a particle of evidence to show that the car was not operated in the usual and customary manner, or that this experience had ever developed any fact which was calculated to give the defendant notice that it owed a duty to give a special warning, or to take any greater precautions than were taken on this particular occasion. Experience is the test in cases of this character, and when experience had demonstrated that cars could be run with safety at the rate of speed at which this car was moving, and under the circumstances disclosed by the evidence, it was not negligent for the defendant to omit those special warnings or other precautions which may be suggested after the accident has occurred. As a general proposition, the way established by long experience of doing a thing is, in law, the safe and prudent way of doing that thing. Nelson v. Lehigh Valley R. R. Co., 25 App. Div. 535, 541, 51 N. Y. Supp. 63, and authorities there cited. The evidence in this case is undisputed that the car was operated in the customary and usual manner, and no one suggests that any accident had ever before occurred at that point under similar circumstances. The Nelson Case was affirmed (165 N. Y. 635, 59 N. E. 1127), and I think the law is well settled upon this point.

While there is some conflict in the evidence as to the number of people inside of the car, the plaintiff's witnesses testifying that all of the seats were full, with some standing in the aisle, there is no evidence that there was not room enough to stand inside of the car as well as upon the platform; and where a passenger voluntarily occupies a place on the platform it is but fair and reasonable that the person so riding should assume the risk ordinarily incident to such a position from the jolts and jars of the moving car, the unevenness of the tracks, and the turning of curves, and not increase the responsibility of the carrier for his safety. Dochtermann v. Brooklyn Heights R. R. Co., 32 App. Div. 13, 15, 52 N. Y. Supp. 1051, affirmed 164 N. Y. 586, 58 N. E. 1087. In other words, where a person with an equal opportunity to ride inside of the car takes his place upon the platform, the corporation owes him no higher duty than it would if he occupied the place provided for his use; and if the experiences of the defendant were such as to justify the method of operation around this curve without warning to those standing inside of the car, it would seem that it was not bound to give notice to those voluntarily occupying the platform, particularly where this same experience had demonstrated that there was no reason to expect persons in the use of ordinary care falling off. This is the doctrine held by the majority of this court in the case of Vogler v. Central Crosstown R. R. Co., 83 App. Div. 101, 82 N. Y. Supp. 485, and I see no reason for changing the conclusion which we then reached that it was not negligent for a street surface railroad to operate its cars over curves in the usual and customary manner, even though the evidence of plaintiff's witnesses should characterize the speed in forcible language. If the operation of the defendant's cars in the usual and customary manner is not negligent, the evidence in this case does not establish a cause of action, and the judgment should be reversed.