Y. & H. R. R. Co., 102 N. Y. 716, 7 N. E. 623; Graham v. Manhattan R. Co., 149 N. Y. 336, 43 N. E. 917.

The main contention of the learned counsel for the appellant on this appeal is that the verdict is against the weight of the evidence. To analyze the evidence would serve no necessary purpose. It embraces a sharply contested issue, which was peculiarly within the province of a jury to determine. While more witnesses were examined by the defendant than by the plaintiff, they are not in entire accord and harmony, and the conclusion reached by the jury seems abundantly supported both by express testimony and by surrounding circumstances. No exception is raised to any of the rulings of the learned trial court, and no valid ground appears for interference with the result. The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.

---

(89 App. Div. 425.)

MOSKOWITZ v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. CARRIERS—STREET RAILROADS—INJURIES TO PASSENGERS—DANGEROUS POSITION—ASSUMPTION OF RISK.

Where plaintiff elected to ride on the step of a crowded street car, and was thrown off by the oscillation or "greyhound motion" of the car as it was running at the usual rate of speed maintained on that portion of its route, and there was no evidence of any unusual or abnormal motion due to any unusual condition of the car, rails, roadbed, or management, plaintiff assumed the risk of an injury so occasioned.

Hirschberg and Woodward, JJ., dissenting.

Appeal from Special Term, Kings County.

Action by Samuel Moskowitz against the Brooklyn Heights Railroad Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Robert H. Roy, for appellant.
I. R. Oeland, for respondent.

JENKS, J. The plaintiff showed an accident, but he did not prove actionable negligence. I think that while riding upon the step of the car he, in the language of Cullen, J., "assumed the risks ordinarily incident to such a position from the jolts and jars of the moving car, the unevenness of track, and the turning of curves." Dochtermann v. Brooklyn Heights R. R. Co., 32 App. Div. 13, 52 N. Y. Supp. 1051. See, too, Ayers v. Rochester Railway Co., 156 N. Y. 104, 50 N. E. 960; Francisco v. Troy & Lansingburgh R. R. Co., 78 Hun, 13, 29 N. Y. Supp. 247.

¶ 1. See Carriers, vol. 9, Cent. Dig. § 1379.

The plaintiff boarded the car at the corner of Richard and Myrtle avenues, in Glendale, where the territory is "free ground, almost farms." The car was then so full of passengers that he was compelled to stand upon the step, and, so standing, to ride. He testifies that the car, while in motion, "gave a jump and throwed him off," but on cross-examination he expatiated:

"The car was going very fast, just like it always runs there; they run fast out there in the country, and this car was running along just like they all run, and I was hanging on there with my two hands on this rail. * * * All at once the car gave a jump, and I fell off. I couldn't state exactly whether it jumped upwards or jumped ahead, but I know I fell off. After I fell, the car stopped; it was still going as fast as it could. I didn't say that it jumped ahead. She didn't jump sideways; she jumped up and down, I suppose, kind of going like this (illustrating), something like a greyhound running."

There is no other evidence as to speed or motion, and there is no evidence that any other person noticed unusual speed or motion, or that any passenger other than this plaintiff was affected by them. It is thus evident that the plaintiff knew of the usual speed of the cars in this neighborhood, that this car was going only at the usual rate, and that he must travel while standing upon the step. He also testifies that, when he fell or was thrown off, the car did not depart from a motion that was then constant. For he says that it neither jumped ahead nor sideways, i. e., there was neither sudden jerk nor sudden aberration; the car simply jumped up and down like a greyhound running, i. e., the motion was a continued oscillation or continuous rocking of the car as it sped along. It is not shown that this motion was unusual or abnormal, or due to any unusual condition of the car, rails, or roadbed, or of its management, so we cannot assume aught but that a car traveling at that rate naturally developed such motion.

As the plaintiff has neither proved nor attempted to prove anything peculiar, we may then go a step further to assume that the accident was due to the continuous and normal jolting or jarring of the moving car (the greyhound motion) incident to its headway. But this was the risk which the plaintiff assumed, as was said in the Dochtermann Case, supra. And so it is not shown that there was any omission or commission pointing to legal neglect on the part of the defendant. Of course, it may be said that if the car had not gone so fast it would not have developed the "greyhound" motion. But, as I have said, there is no evidence that the speed was unusual (but the contrary), or that the speed was unlawful. And it was not incumbent upon the common carrier of passengers, when the plaintiff placed himself upon the step of the car, even though it permitted him to ride there as a paying passenger, to reduce the speed of its car from its usual and presumably lawful rate, so that it might lose its then natural oscillation. I think that the learned trial court (White, J.) rightly dismissed the plaintiff.

Examination of the cases cited in support of a reversal (McGrath v. Brooklyn, Queens Co., etc., R. R. Co., 87 Hun, 310, 34 N. Y. Supp. 365; Hassen v. Nassau Electric R. R. Co., 34 App. Div. 71, 53 N. Y. Supp. 1069; Brainard v. Nassau Electric R. R. Co., 44 App. Div.

613, 61 N. Y. Supp. 74; Henderson v. Nassau Electric R. R. Co., 46 App. Div. 280, 61 N. Y. Supp. 690; Lucas v. Metropolitan Street R. Co., 56 App. Div. 405, 67 N. Y. Supp. 833; Clark v. Eighth Avenue Railroad Company, 36 N. Y. 135, 93 Am. Dec. 495; Ginna v. The Second Avenue Railroad Company, 67 N. Y. 596; Nolan v. Brooklyn City & N. R. R. Co., 87 N. Y. 63, 41 Am. Rep. 345; Graham v. Manhattan R. Co., 149 N. Y. 336, 43 N. E. 917; Hastings v. Central Crosstown R. R. Co., 7 App. Div. 312, 40 N. Y. Supp. 93; Dillon v. Forty-Second Street R. Co., 28 App. Div. 404, 51 N. Y. Supp. 145) shows an essential difference, not only in the facts, of course, for all cases thus differ, but in the essential fact which brought home negligence to those defendants, and which fact respectively has no similar basic fact in the case at bar. But instead of paragraphic comments upon each case, perhaps I may thus more briefly indicate the discriminations: In McGrath's Case, the accident was due to speed which produced violent and unequal motion. This was established by several witnesses, and people were shaken around and off their seats. In Hassen's Case, the motorman should not have applied excessive motor power suddenly, so as to cause a sudden violent jerk. In Henderson's Case, the driver should not have driven his car so as to cause violent contact between the passenger and the van on the highway. In Lucas' Case, when the driver intended to turn a curve at "terrible speed," the passenger should have been warned at that point that he must increase his caution. In Clark's Case, the driver could have stopped in time to avoid imminent collision, and should not have driven on into danger. In Ginna's Case, the switch was left open, so that the car ran off upon it, producing a violent jolt or shock. In Nolan's Case, the driver should not suddenly have whipped one of the horses so that it plunged terribly under the blow, first forward and then to one side. In Graham's Case, the defendant should not have disobeyed the statute as to gates and the closing of them, nor should its servant have conducted himself so as to cause the crowd to sway and jostle the plaintiff, so that he must grasp the railing and hence suffer injury. As Martin, J., says:

"Even if the plaintiff assumed the ordinary risk which attended riding on the platform, he had a right to assume that the defendant's servants would cause no unusual disturbance of the crowd, and that the cars were so constructed as not to render his position dangerous from their proximity to each other in passing over any portion of the road, or at least, if such danger existed, that he would be apprised of it."

In Hastings' Case, the driver should not have given the horse a sudden blow with the whip, which caused him to plunge forward so as to carry the car off the track. In Dillon's Case, the driver should not have driven the car at a rapid rate when he struck the temporary turnout with violence.

I have attempted thus to indicate the salient feature which, to the minds of the courts respectively, warranted submission to the jury. But where can I find the corresponding act or omission for a basis of negligence in the case at bar? For I find upon the evidence nothing but a natural motion, constant, and incidental to the usual speed of cars in that vicinity, which is not shown to be unlawful, and which

was well known to the plaintiff, for does he not say that the car traveled as all other cars? It must be kept clear in mind that the plaintiff does not testify to a sudden lurch or jump, but he almost immediately describes the expression, "all at once it gave a jump and I fell off," by saying:

"I couldn't state exactly whether it jumped upwards or jumped ahead, but I know I fell off. * * * I didn't say that it jumped ahead; she didn't jump sideways, she jumped up and down, I suppose, kind of going like this (illustrating), something like a greyhound running."

The plaintiff, then, defines his own word, and to my mind does not intend to describe any sudden or abnormal motion of the car, but simply the jumping up and down, the oscillation—the "greyhound motion"—incident to and constant with the "going" of the car at that rate of speed, which was continuous while the plaintiff was upon the car.

I do not understand the rule to be that there is any implied assurance that the car will be run so as to make it safe in the sense that such assurance is insurance, but that the obligation is that of a high degree of care, and I do not believe that this obligation assures the plaintiff against the risks ordinarily incident to his place, due to the jars and jolts natural and normal to the progress of the car, when its rate of speed is not shown to be unlawful or negligent per se. I think that the plaintiff cannot be heard to say, "I was thrown off the car, therefore the rate of speed was negligence," and so insist that he was thereby given some proof of actionable neglect. Francisco v. Troy & Lansingburgh R. R. Co., supra. I do not construe the language of the Dochtermann Case in any sense to the contrary. In the sentence, "Now, while it is not negligence per se to stand on the platform of a street car, it is but fair and reasonable that the person so riding should assume the risk ordinarily incident to such a position," etc., I think that the expression "so riding" refers to a person standing on the platform, and, as thus standing, riding on the platform; i. e., that the force of "so" is confined to this sentence, and does not refer to the prior sentence, so as to mean not only a person voluntarily and without necessity riding on the platform, as referred to by the learned justice who wrote in that case. Moreover, it may be said that this plaintiff voluntarily rode there. He exercised his free will when he chose to take the only position which was open to him. There was necessity for riding there if he wished to travel on that particular car, but, nevertheless, he voluntarily became a passenger in it. Finally, the plaintiff was not riding on a platform, but on a step, which the Court of Appeals, in Nolan's Case, supra, say "was a position palpably more dangerous than riding on a platform." Indeed, in Francisco v. Troy & Lansingburgh R. R. Co., supra, the court say that the court in Nolan's Case held clearly, by implication, that such a position was negligence per se.

The judgment should be affirmed, with costs.

GOODRICH, P. J., and BARTLETT, J., concur.

HIRSCHBERG, J. (dissenting). I dissent from the decision of the court in this case, as I think a question was presented by the plaintiff's evidence for submission to the jury. The plaintiff was received by the defendant as a passenger on one of its closed cars, which was crowded at the time, and which was coming to Brooklyn, but which was stopped in order to enable him to get on at the corner of Richard and Myrtle avenues, in Glendale. It was so crowded that he could only secure footing upon the step, and he stood there, holding on by the car handle with both hands, until, while running very fast, the car, to use his language, "gave a jump and throwed me off." On cross-examination he said the car—

"Was going very fast, just like it always runs there; they run fast out there in the country, and this car was running along just like they all run—just about as fast—and I was hanging on there with my two hands onto this rail. I do not remember anything about my hat slipping, and my making a grab for my hat; I am sure no such thing happened. All at once the car gave a jump, and then I fell off. I couldn't state exactly whether it jumped upwards or jumped ahead, but I know I fell off; after I fell the car stopped. It was still going as fast as it could. I didn't say that it jumped ahead. She didn't jump sideways; she jumped up and down, I suppose; kind of going like this (illustrating); something like a greyhound running."

There was no evidence to the contrary, and the nonsuit is based necessarily upon the theory that the common carrier who invites a passenger for hire to occupy a precarious position upon the step owes him no duty of unusual or extra care, but may injure him without liability, provided it is done by running in the usual way, notwithstanding the existence of conditions which may be presumed to be unusual in the absence of proof that the defendant's cars are always overcrowded, or that positions on their steps are always sold. The law should be otherwise, and should require such a passenger to be carried with that degree of care which will make his position reasonably safe. A sudden lurch or jump of the car, or a speed which makes it impossible for him to hang on, constitutes some evidence of the lack of such care. I think the authorities are to that effect, and that, while no negligence can be imputed to the plaintiff as matter of law, it can neither be said as matter of law that the defendant discharged its full duty in taking the plaintiff's fare and then throwing him off from his perilous perch. In affirming a judgment recovered under somewhat similar circumstances in McGrath v. Brooklyn, Queens Co., etc., R. R. Co., 87 Hun, 310, 34 N. Y. Supp. 365, the General Term in the First Department said (page 314, 87 Hun, and page 367, 34 N. Y. Supp.):

"The evidence in the case justified the jury in finding that in consequence of the crowded condition of those cars the passengers were compelled to ride upon the steps, and that they had been accepted as passengers in such a condition of the cars, and that, notwithstanding the dangerous position in which these passengers were undoubtedly placed, the cars were run at a high rate of speed, and the deceased was thereby shaken off."

In Hassen v. Nassau Electric R. R. Co., 34 App. Div. 71, 53 N. Y. Supp. 1069, this court held that a passenger who was permitted to ride upon the running board of a car, and who was thrown off by a sudden jerk, could recover; that it was not negligence per se to ride

upon the running board; and that the jerk was sufficient evidence of negligence under the circumstances. The court said '(page 74, 34 App. Div., and page 1071, 53 N. Y. Supp.) :

"The defendant had accepted the plaintiff for carriage, it collected his fare, and knew the place he occupied upon the car. It was bound to know that the application of motive power in such manner as to cause the car to give a violent jerk was extremely hazardous, in view of the position of many of the passengers upon the car, and might result in injury. The jury were therefore authorized to say that it was a negligent act. Dochtermann v. Brooklyn Heights R. R. Co., 32 App. Div. 13 [52 N. Y. Supp. 1051]; Schaefer v. Union Ry. Co., 29 App. Div. 261 [51 N. Y. Supp. 431]."

The same principle was enforced by this court in Brainard v. Nassau Electric R. R. Co., 44 App. Div. 615, 61 N. Y. Supp. 74, with the additional holding that under the circumstances of this case it is fair to assume that the passenger who is placed in a dangerous position is availing himself, while there, of such means as are provided for his security.

In Henderson v. Nassau Electric R. R. Co., 46 App. Div. 280, 61 N. Y. Supp. 690, this court expressly held that, where the defendant accepted passengers standing upon the running board, it was chargeable with notice of the risks incident to their position, and that it was the duty of those occupied with the operation of the car to exercise great care to see that injury is not inflicted upon such passengers. To the same effect is the earlier decision of this court in Wood v. Brooklyn City R. R. Co., 5 App. Div. 492, 38 N. Y. Supp. 1077.

In Lucas v. Metropolitan Street R. Co., 56 App. Div. 405, 67 N. Y. Supp. 833, the Appellate Division in the First Department has since gone still farther, and has laid down the salutary doctrine that a street railroad company which permits a passenger upon one of its cars, who is unable to obtain a seat, to stand upon the front platform, and there collects his fare, is obliged to exercise extraordinary care to transport him to his destination without injury.

See, also, Sheeron v. Coney Island & Brooklyn R. R. Co., 78 App. Div. 476, 79 N. Y. Supp. 752, where it was expressly held by this court that, under similar conditions in effect as those herein presented, the case should be submitted to the jury.

In Clark v. Eighth Avenue Railroad Co., 36 N. Y. 135, 93 Am. Dec. 495, the Court of Appeals held that, while riding on the platform of a street car was prima facie evidence of negligence, the presumption was rebutted on showing the car and platform to be full of passengers, with no room for more, and that the conductor called for and received fares from such passengers. The court further held, as per the headnote, that "such fact warrants the jury in finding that the plaintiff had been invited by those having charge of the car to ride in that place, and that an implied assurance had been given that it was a suitable and safe place to ride." See, also, Francisco v. T. &. L. R. R. Co., 88 Hun, 464, 34 N. Y. Supp. 859; Miller v. King, 18 App. Div. 41, 45 N. Y. Supp. 379; Grotsch v. Steinway Ry. Co., 19 App. Div. 130, 45 N. Y. Supp. 1075; Schaefer v. Union Ry. Co., 29 App. Div. 261, 51 N. Y. Supp. 431; Dochtermann v. Brooklyn

Heights R. R. Co., 32 App. Div. 13, 52 N. Y. Supp. 1051; Eberhardt
v. Metropolitan Street R. Co., 69 App. Div. 560, 75 N. Y. Supp. 46;
Ginna, Adm'r, v. Second Avenue Railroad Co., 67 N. Y. 596; Bar-
tholomew v. N. Y. City R. Co., 102 N. Y. 716, 7 N. E. 623; Graham
v. Manhattan R. Co., 149 N. Y. 336, 43 N. E. 917; Hastings v.
Central Crosstown R. R. Co., 7 App. Div. 312, 40 N. Y. Supp. 93;
Dillon v. Forty-Second Street R. Co., 28 App. Div. 404, 51 N. Y.
Supp. 145.

I am unable to find a case to the contrary. Of those cited on be-
half of the respondent, it may be said, as was said by Judge Cullen
in one of them, viz., Dochtermann v. Brooklyn Heights R. R. Co.,
32 App. Div., at page 15, 52 N. Y. Supp. 1052:

"Most of the cases cited by the respondent's counsel are plainly distin-
guishable from the one before us. Hayes v. Forty-Second St. etc., R. R. Co.,
97 N. Y. 259, Paulson v. Brooklyn City R. R. Co., 13 Misc. Rep. 387 [34 N.
Y. Supp. 244], and Bradley v. Second Avenue R. R. Co., 90 Hun, 419 [35 N.
Y. Supp. 918], were all cases where the parties voluntarily, and without
necessity, were standing on the platform. Now, while it is not negligence
per se to stand on the platform of a street car, it is but fair and reasonable
that the person so riding should assume the risk ordinarily incident to such
a position from the jolts and jars of the moving car, the unevenness of the
track, and the turning of curves, and not increase the responsibility or lia-
bility of the carrier for his safety."

What was said by the learned jurist of the persons "so riding"
must be deemed to refer to those alluded to by him in the sentence
immediately preceding, viz., "those who voluntarily and without ne-
cessity" chose to ride upon the platform, for there was no obvious
intent to overrule the class of cases from which I have made citation.
Those who voluntarily and unnecessarily elect to ride in a dan-
gerous place may very well be held to assume the risk incident to
the position, and as to them there is of course no assurance on the
part of the carrier that the place is safe, as was said by the Court
of Appeals in the Clark Case, supra, and no duty enjoined by law
of protecting them by the exercise of extraordinary care, as was said
by the Appellate Division in the First Department in the Lucas Case,
supra. But the doctrine of the many cases herein cited has not yet
been authoritatively overthrown, to the effect that passengers who
are forced or invited by the common carrier to occupy a position upon
the platform, the steps, or the running board may travel there upon
the implied assurance that the car will be so run as to make it safe;
that the duty exists upon the part of the carrier to insure such safety
so far as the exercise of commensurate care will accomplish that re-
sult; and that a sudden jerk or jump, or a rate of speed so great as
to necessarily throw them from the car (Hassen v. Nassau Electric
R. R. Co., supra), is of itself sufficient evidence of negligence under
the circumstances. The court cannot take judicial notice, and there
certainly was no proof, that the defendant's cars are always over-
crowded, and that the steps, as well as the body of the cars, are al-
ways sold to patrons. The overcrowding of the car must therefore
be regarded as unusual. It may be that the plaintiff's injuries were
slight, but that fact does not affect his right to justice and to the
enforcement of the law.

None of the authorities mentioned in the prevailing opinion supports the doctrine that the common carrier of passengers for hire is exempted from liability merely because the mischief was accomplished by a greyhoundlike movement of the car. The plaintiff's testimony that "all at once the car gave a jump" is a distinct assertion that the movement which threw him off was a sudden one, and in that particular different in character from the preceding movement, under which he had managed to maintain his footing. He gave undisputed evidence tending to establish that he was accepted as a passenger in a place where his safety depended upon his being carried at a rate of speed which would enable him to hang onto the means of safety furnished him, and that he was nevertheless carried along without any relaxation of the usual fast rate, until by a jump of the car, which came all at once, he was torn from his holding, and thrown to the ground by reason of a sudden jump of the car thus occasioned, and both in reason and by authority was clearly entitled to submit his claim for compensation to the judgment of a jury.

I therefore vote for reversal.

WOODWARD, J., concurs.